Robertson *v.* Caw.

---

SAME TERM. *Before the same Justices.*

ROBERTSON and others, *appellants, vs.* CAW, *respondent.*

A legacy to a person who is a subscribing witness to the will, and who may be examined as a witness on the probate of the will, to prove the execution thereof, *is void.*

To render a person a subscribing witness to a will, within the meaning of the law, it is not necessary that his testimony, on proving the will before the surrogate, should establish all the ceremonies of the attestation.

The fact that one of the subscribing witnesses to a will did not sign the same as a witness *at the request of the testatrix* cannot in a suit between him and the executors be proved by his own affidavit, taken before the surrogate on the proving of the will.

What a party swore to as a witness on a former occasion cannot be given in evidence in his favor, though it may be, against him.

Robertson *v.* Caw.

The decision of the surrogate, on a trial before him as to the validity of a will, that a legatee therein named who had signed his name as a subscribing witness thereto, was not a subscribing witness within the meaning of the law, will not conclude other legatees, in a controversy between them and the executors.

A will contained this bequest: " To the Associate Reformed Church of B. $500, provided that Rev. D. C. continues to be their pastor for seven years to come, but if not, then it must be paid over to said D. C. with interest;" *Held,* by WILLARD, J. that the bequest to the church was upon the condition that D. C. should continue to be their pastor for seven years; and that the same being a condition precedent the church would take no vested interest until the condition was performed. And D. C. having been regularly dismissed from the charge of the church within the seven years;

*Held also,* by WILLARD, J., that the legacy could never vest in the church. And the bequest over to D. C. being void, by reason of his being a subscribing witness to the will,

*Held further,* by WILLARD, J., that the legacy fell into the residue, and went to the residuary legatee.

The word " provided" is the appropriate term for creating a condition precedent. *Per* WILLARD, J.

THIS was an appeal from the final decree of the surrogate of the county of Fulton, pronounced on the 13th of October, 1846. The appellants are the executors of the last will and testament of Margaret McPherson, late of the county of Fulton, deceased. The will was dated 7th of July, 1844, and was admitted to probate by the surrogate of Fulton county on the 13th of September, 1844. The subscribing witnesses to the will were William Walker, William Chambers, and David Caw; the respondent, each of whom is a legatee named in the will, and each of whom was examined as a witness before the surrogate, on admitting the will to probate. The will, among other things, contained this bequest : " To the Associate Reformed Church of Broadalbin five hundred dollars, provided that Rev. David Caw continues to be their pastor for seven years to come, but if not, then it must be paid over to said David Caw with interest." On the 14th of April, 1846, the executors applied to the surrogate of the county of Fulton, in pursuance of the 70th section of article 3, title 3, chapter 6, of part 2, of the revised statutes, and obtained a citation to all persons interested in the estate of the testatrix, to attend the final settlement of their accounts. The citation was served upon all the legatees and

persons interested in the estate, and a guardian ad litem was appointed for Alexander Campbell, an infant, who is the nephew of the testatrix and the residuary legatee in the will. All the parties interested appeared before the surrogate, and the executors rendered their accounts. The cause was adjourned from time to time. David Caw claimed the legacy above mentioned, but the executors refused to allow it, insisting that it belonged to the Associate Reformed Church of Broadalbin. It was proved on the part of Caw, that on the 18th of June, 1846, he was regularly dismissed from the charge of the said church, and the pastoral relation between him and that church regularly dissolved by the proper action of the presbytery to which it was attached. This proceeding was had at his own instance, but was not objected to by the church. Mr. Caw soon after, and before the passing of these accounts, was regularly settled over another congregation. For these reasons he insisted the legacy belonged to him. The executors insisted, that as he was a subscribing witness to the will, and still resided in this state, and indeed in the same county, and was not disabled from being a witness, and was in fact examined as a witness before the surrogate on the probate of the will, the legacy to him was void. The counsel for the respondent then offered in evidence the record of the probate of the said will, together with the affidavits of the subscribing witnesses thereto, and to show thereby that the will was proved by Chambers and Walker, two of the subscribing witnesses; and they offered the testimony taken at the same time before the surrogate, of the said David Caw, to show that he then testified that though he subscribed said will as a witness, he did not do so at the request of the testatrix. This testimony was objected to by the counsel for the appellants, but the objection was overruled by the surrogate and the testimony was received. Other evidence was given tending to show that David Caw, the respondent, did sign as a witness at the request of the testatrix. The fact that his name was subscribed by himself, under the attestation clause, with the other witnesses, was admitted. And it was also proved and admitted that the whole body of the will was in his hand-writing. It

Robertson *v.* Caw.

appears from the surrogate's return, that the guardian ad litem for the residuary legatee claimed the legacy as going to him; and insisted that neither Caw nor the church was entitled to it. The counsel for the church insisted that the legacy vested at once in the church, and was liable to be defeated by condition subsequent, viz. the dismissal of Caw from his pastoral relation to the said church. That the payment by the executors to the trustees of the church was therefore a good payment, and that the remedy of Caw was against them. This payment to the trustees of the Associate Reformed Church in Broadalbin was made by the executors on the 22d of August, 1846, after the commencement of the proceedings before the surrogate to account. James Robertson, one of the executors, was also one of the trustees of the said church.

The surrogate decided that the objection that the legacy to Caw was void in consequence of his being a subscribing witness to the will, was not well taken, inasmuch as it appears " that he was not legally a subscribing witness, and was not used as a witness in the proving of this will, and therefore did not come within the provisions of the statute in such case provided." That the contingency had happened which gave the legacy to Caw, and he accordingly decreed that the executors " pay to said Rev. David Caw the bequest of $500 mentioned in said will, together with the interest on the same from the 10th of February, 1845, to the 10th of October, 1846, being $58,34, and being in all $558,34, and also $15 costs, and the surrogate's fees $14,38." These payments were directed to be made out of the estate of the testatrix in their hands, and the decree disposed of the residue of the assets in the hands of the executors. The appeal was from so much of the decree as required the executors to pay the legacy and costs to the respondent Caw.

*John Wells*, for the appellant.

*Wm. McFarland*, for the respondent.

Robertson *v.* Caw.

*By the Court,* WILLARD, J. The first question arising on this appeal is, whether the subscription by David Caw, the respondent, as a witness to the will of the testatrix, avoids the legacy therein bequeathed to him. The revised statutes (2 *vol.* 65, § 50,) contain this provision on the subject: " If any person shall be a subscribing witness to the execution of any will, wherein any beneficial devise, legacy, interest or appointment of any real or personal estate, shall be made to such witness, *and such will cannot be proved without the testimony of such witness,* the said devise, legacy, interest or appointment shall be void, so far only as concerns such witness or any claiming under him ; and such person shall be a competent witness and compellable to testify respecting the execution of the said will, in like manner as if no such devise or bequest had been made." The 40th section (*Id.* 63,) requires, among other things, as a requisite to the valid execution of a will, that " There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator." The 10th section of the act of 1837, (*Laws of* 1837, *p.* 526,) requires that in all cases " two at least of the witnesses to the will, if so many are living in this state, and of sound mind, and are not disabled from age, sickness or infirmity, from attending, shall be produced and examined." And the 11th section provides, " that in case the will is contested, and any person having the right to contest the same, shall before probate, file with the surrogate a request in writing that all the witnesses to such will shall be examined ; then all the witnesses to such will, who are living in this state, and of sound mind, and who are not disabled from age, sickness or infirmity, from attending, shall be produced and examined."

All the subscribing witnesses to this will resided within this state, and were in fact examined as witnesses. And none of them labored under any of the disabilities above mentioned. From the foregoing legislative provisions it is obvious, that all the subscribing witnesses to a will may in certain contingencies be indispensable to the proof of the will. To render each witness competent, his legacy is declared to be void. This

Robertson *v.* Caw.

does not depend upon the information the subscribing witness may be able to impart, but on the question whether his name is in fact placed in such position as to render it indispensable that he should be called and examined as a witness.   There is no hardship in this ; as the act of attestation is a voluntary act.   Mr. Caw drew this will, and knew its contents.   He must be presumed to have known that his attestation of the will worked a forfeiture of his legacy.   He was a proper person, independent of the bequest, to be a subscribing witness.   In case the will had been contested, he must have been examined as a witness, whether he was a subscribing witness or not ; provided he was competent in other respects.   The party who receives the instructions for a will from a testator, and above all the party who draws the will, should be a disinterested person. The conduct of the scrivener, who derives the slightest benefit under the will, has always been watched with jealousy.   A will in the hand-writing of a principal legatee is not admitted to probate by the English ecclesiastical courts without satisfactory explanations, beyond the ordinary proof by the subscribing witnesses.   The presumption is strong against an act done by the agency of the party benefited.   (1 *Phil. Ec. Rep.* 187.   2 *Id.* 323.   3 *Id.* 456.   1 *Hagg.* 384, 620.)   By the civil law the act was absolutely defeated.   (*Dig. lib.* 34, *tit.* 8.   " *De eo quodquis sibi adscripsit in testamento.*")   And the Napoleon code (*art.* 975,) provides " that neither of the legatees, by what title soever they are so, nor their relatives, nor connections, even to the fourth degree inclusive, nor the clerks of the notary by whom the acts shall be taken, shall be capable of being received as witnesses of the will by public act."

Although the valid execution of this will cannot be questioned, on this appeal, yet the foregoing considerations vindicate the policy of the rule which avoids a legacy to a subscribing witness.   On principle it should avoid it, in every case, whether the probate be contested or not.   The revised statutes (2 *vol.* 58, § 12,) originally required *all* the witnesses to the will who were living, and in this state, and of sound mind, to be produced and examined.   This left but a small scope for the ope-

Robertson *v.* Caw.

ration of the exception in the 50th section, *supra.* The repeal of the 12th section of the revised statutes, and the substitution of section 11 in the act of 1837, (*Laws of* 1837, *p.* 526,) was not designed to increase the chances in favor of the witness' taking under the will, but to relieve the executors or devisees who have an interest in proving and recording it, from the increased labor and expense of producing and examining all the witnesses beyond two, except when a party having a right to contest the will should file with the surrogate, a request in writing, that all the witnesses to such will should be examined. As *all* the subscribing witnesses, whatever be their number, are liable, if living, to be examined, full effect cannot be given to the statute without avoiding their legacies. They must all thus be rendered competent, in order that those affected by the will may be entitled to their evidence. The competency of the witness does not depend on the accuracy of his recollection, nor on the influence which his testimony may have in upholding or invalidating the will. He may be able to give material evidence touching the testamentary capacity of the testator, and fail to recollect many of the statutory forms prescribed for a valid execution of a will. He cannot be said not to be a subscribing witness, merely for the reason that his testimony alone does not establish all the ceremonies of the attestation. The surrogate was wrong in holding that a man is not a subscribing witness to a will, within the meaning of the law, unless his testimony proves a compliance with all the forms which the statute has prescribed in such cases. I think the legacy to Caw was void, for the reason that he was a subscribing witness and capable of being examined, and was actually examined as a witness at the probate of the will.

But if it was competent to prove that Mr. Caw did not sign the will, as a witness, *at the request of the testatrix,* that fact could not be proved by his own affidavit, taken before the surrogate, when the will was admitted to probate. What a party swore to on a former occasion, cannot be given in evidence in his favor, though it may be against him. A party cannot thus manufacture testimony for himself. Nor does the certificate of

Robertson v. Caw.

the surrogate, that the will was proved before him by the oath of Chambers and Walker, two of the subscribing witnesses, impart vitality to the legacy to Caw. The decision of the surrogate, on a trial before him as to the validity of a will, that a legatee therein named, who had signed his name as a subscribing witness thereto, was not a subscribing witness within the meaning of the law, cannot conclude other legatees, in a controversy between them and the executors. The question on proving a will for probate and as a will of real estate is between the executors on the one side and the heirs at law and next of kin on the other. (*Laws of* 1837, *pp.* 524, 525.) The legatees are not parties unless they institute the proceedings themselves, under the 4th section, page 524. They did not do so in this case, but the will was proved on the application of the executors. No decision on that proceeding, except the order admitting the will to probate and directing it to be recorded as a will of real estate, concluded any body. The probate is conclusive evidence of the validity of the will, until reversed on appeal, or revoked by the surrogate, or the will be declared void. (2 *R. S.* 61, § 29.) The certificate of the due proof of the will as a will of real estate merely, entitles it to be read in evidence, subject to be repelled by contrary proof. (2 *R. S.* 58. *Laws of* 1837, *p.* 528.) The surrogate is clothed with no authority to certify any thing else but the proof of the will.

The suit by the executors, before the surrogate, on rendering their final accounts, is between them and the legatees. Neither the heirs nor next of kin are parties, as such. (2 *R. S.* 92.) Nor need they be cited, on passing the accounts of the executors, unless they happen also to be creditors or legatees, or both; and it is then in the latter character that they are cited. The decision of the surrogate, therefore, on granting probate, that Caw was not a witness, was extra-judicial and void, and it was between other parties than those against whom it was given in evidence. ' (*See* 1 *Phil. Ev.* 322 *et seq.*)

The decree of the surrogate was erroneous and must be reversed. And as this court is bound on this reversal, to make such decree as the court below ought to have made, it becomes

Robertson v. Caw.

necessary to inquire, in the next place, to whom the legacy in question belongs. The bequest to the church was evidently upon the condition that the respondent continued to be their pastor for seven years to come. This is a condition precedent, and the church has no vested interest till the condition is performed. As there was a bequest over, in case the contingency did not happen, the condition cannot be regarded merely as *in terrorem*. (*Cleaver* v. *Spurling*, 2 *P*. *Wms*. 528.) This is not a vested legacy to be defeated by the happening of a condition subsequent. The apparent motive for the bounty of the testatrix, was the seven years' continuance of Mr. Caw as pastor. And she obviously intended that that event should happen before the legacy should vest in the church. The word used, "*provided*," &c. is the appropriate term for creating a condition precedent. (*Prest. on Leg.* 130. 2 *Will. Ex.* 785.)

As the happening of the event on which the title of the church to the legacy depended, has been defeated by the dissolution of the pastoral relation between Mr. Caw and the church, the legacy can never vest in the church. It has been shown already, that the bequest over to Mr. Caw was void by reason of his being a subscribing witness to the will. The legacy therefore falls into the residue, and goes to Alexander Campbell, the residuary legatee.

The decree of the surrogate, so far as it directs the payment, by the appellants to the respondent, of the legacy of five hundred dollars, together with costs, must be reversed; and the residue of the decree must be modified accordingly. No costs will be given to either party on this appeal, as against the other.

CADY, P. J.; and HAND, J., concurred in the reversal of the decree of the surrogate, but abstained from expressing an opinion as to the further disposition of the legacy.

Decree of surrogate reversed, without costs.