Rannet, J.
From the bill of exceptions taken upon the trial, it appears that the defendant in error called a man by the name of Tolls, as a witness, who gave evidence material to the issue. The plaintiff in error then proposed to show, by another witness, that Tolls had made statements out of court different from his testimony in court, for the purpose of contradicting and impeaching him. This evidence was objected to, upon the ground that the witness Tolls had not been inquired of whether he had not made such statements as were proposed to bo proved to the other witness, or whether he had said anything -to that witness upon the subject. The defendant in error proposed to the plaintiff, that he might recall the witness Tolls, and so lay the foundation for the evidence to contradict him; but this offer was declined, and thereupon the court sustained the objection, and ruled out the evidence. In this it is claimed they erred.
We are aware that some diversity of practice upon this question *77 has obtained in the courts of common pleas in different parts of this state. This case was reserved for the purpose of settling the rule and securing uniformity upon the subject. The case upon authority is exceedingly clear. The imported cases and elementary books speak an almost uniform language upon the subject. The leading ease in England was that of the Queen, reported in 2 Broderip & Bingham, 314. Lord Abbott, C. J., delivered the unanimous opinion of the judges, holding that evidence to contradict or impeach a witness, by proving that he had made different statements out of court, could not be received until the witness was first asked, upon cross-examination, whether or not he had said or declared that which was intended to be proved. But the counsel for the plaintiff in error is mistaken in supposing that the doctrine rests alone or mainly upon this decision. It has been followed in England by the cases of Angus v. Smith, 1 M. & Malk. *473; Crowly v. Page, 7 Car. & P. 789; Regina v. Shellend, 9 Car. & P. 277; Regina v. Holden, 8 Car. & Payne, 606; and is the clear and undeniable rule of the English courts at this day. It has been almost universally acquiesced in in this country. It was adopted in Now York in the cases of Everson v. Carpenter, 17 Wend. 419; and Robertson v. Carr, 3 Barb. 410; in Pennsylvania, in McAteer v. McMullen, 2 Barr. 32; in Vermont, in Downer v. Dana, 19 Vt. 338; in Maryland, in the Franklin Bank v. The Steam Navigation Co., 11 Gill & Johnson, 28; in Indiana, in Doe v. Reagan, 5 Black. 217, and Weinzorpflin v. The State, 7 Black. 186; in Illinois, in Regnier v. Cabot, 2 Gil. 34; in Tennessee, in Story v. Saunders, 8 Humph. 663; and by Mr. Justice McLean, in the case of McKinney v. Neal, 1 McLean, 540. It is believed to be the rule in every state in the Union, where the question has been raised, except Massachusetts and Maine. It is also the doctrine laid down in the most approved elementary books. Mr. Greenleaf, in his work on Evidence (vol. 1, p. 542, sec. 462), after stating that the credit of a witness may be impeached by proof of statements out of court contrary to what he has testified at the trial, adds: “Before this can be done, it is generally held necessary, in the case of verbal statements, first to ask him as to the time, place, and person involved in the supposed contradiction. It is not enough to ask him the general question, whether he has ever said so and so, nor whether he has always told the same story; because it may frequently happen that, uoon the general question, he may not *78 remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect, and explain what he has formerly said.” And this course he regards as indispensably necessary, as a matter of justice to the witness whose testimony is sought to be impeached-Mr. Starkie (3 Starkie’s Ev. 1753) lays down the same rule in the most unqualified manner, and after enforcing the necessity of adhering to it to enable the witness to give such reasons, explanations, or exculpations of his conduct, if any there be, as the circumstances may furnish, and thus the *whole matter be brought before the court at once, which is the most convenient course, says: “ And it is of great importance that this opportunity should be thus afforded, not only for the reasons already suggested, but because such explanation, if not given in the first instance, may be rendered impossible; for a witness who has been examined, and has no reason to suppose that his further attention is requisite, oiten departs the court, and may not be found or brought back until the trial be at an end.” The doctrine is also laid down by Phillips (1 Phillips’ Ev. 295), and is indorsed by Mr. Justice Cowen, in his notes to that work (vol. 2, p. 774), and enforced by a striking illustration of its wisdom, by an example drawn from his own practice upon the bench. We should be very slow to depart, unless the most careful investigation convinced us of the necessity, from a rule thus sanctioned by the ablest elementary writers, whose works are placed in tho hands of every student, and so many of the highest courts in different parts of the world. Such investigation and scrutiny, however, only serve to convince us of its wisdom, and of the propriety of adhering to it. In addition to the reasons already stated, others equally cogent could be given. To make the truth manifest upon the issues joined between the parties, is the object of all evidence. This testimony has no direct bearing upon any disputed fact, but raises a collateral issue upon the credit to be given to a witness, and, with all collatei’al issues, is calculated to divert the minds of the jury from the points in controversy in the case. Such collateral inquiry may and often will become necessary, but it should be avoided where it can be; and I firmly believe it may be avoided in a majority of oases, where the inquiry is first made of the witness himself, either by his confessing such contradictory statements, or giving such explanations in regard to them as will convince the *79 party that nothing is to be made by pursuing the matter further Again, witnesses are required, willing or unwilling, to come into court and testify. They should appear there under the full confidence that their feelings and reputations will be respected and protected, so far *as is consistent with the ends of justice. The witness suddenly finds himself on trial for his veracity, and his character attempted to be impaired, not only for the purposes of the present controversy, but unavoidably with his neighbors afterward. His disregard of truth is sought to be established by the most uncertain and unsatisfactory of all evidence—mere verbal declarations. A word imperfectly heard, forgotten, or omitted, may change his whole meaning, and make him say what he never thought of; or even the imperfection of his own language may have misled the hearer. His seeming inconsistency may be proved by very honest witnesses, while he feels conscious of being wronged; and thus an angry and excited contest very often continues through a whole trial, and embroils a neighborhood in bitter strife for years afterward, which might all have been avoided by one minute’s explanation, in the first instance, from the party implicated, in the presence of those brought to impeach him. The opportunity for explanation at the outset not being improved, the breach widens as the contest progresses, until it becomes a matter of astonishment how small a matter is sufficient to lay the foundation of a great controversy. We are satisfied this rule impairs no substantial right of any .suitor, while the cause of justice gains much by its observance.
The judgment is affirmed.