Burns *v.* Clark.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 1, 1861.  *Bacon, Allen, Mullin* and *Morgan,* Justices.]

———————•◦•———————

SUSAN BURNS *vs.* CHARLES C. CLARK and others, executors, &c.

Where a testator gave the plaintiff a legacy of $200, to be paid in one year after his decease, upon the express condition that the plaintiff should, at the time, be, in the judgment of the testator's wife, worthy of that token of his remembrance ; *Held* that the legacy was given upon a condition precedent, and that the legatee took no vested interest therein, upon the will becoming operative.

*Held, also,* that the legacy not having been given over to any one else, and a compliance with the condition being *impossible,* in consequence of the *insanity* of the testator's wife rendering her incapable of acting, it was sufficient that it was complied with as nearly as practicable, or *cy prés.* And that, upon showing that she had, so far as lay in her power, complied with the requirement of the condition by so conducting herself as to become entitled to be adjudged worthy of the testator's bounty, she could take the legacy.

THIS is a case agreed upon and submitted without action, pursuant to section 372 of the code.    The facts stated in the submission are substantially these : The testator, Alvah Hunt, died on the 30th of October, 1858, leaving a will of real and personal estate, which has been duly proved in the surrogate's court, and appointing the defendants executors thereof, and they have duly qualified and entered upon their duties as such executors.    The following is one of the provisions of said will.

"Fifth. I give, devise and bequeath to Susan Green, a

mulatto girl, who formerly lived with us, the sum of two hundred dollars, one year after my decease; this bequest, however, is upon the express condition that the said Susan shall at that time be, in the judgment of my wife, worthy of this token of remembrance from me, otherwise to be void." The plaintiff, who is now the wife of one Thomas M. Burns, is the same Susan Green mentioned and described in the above clause of said will. She had lived in the family of the testator from the time she was six till she was twelve years old. Prior to the execution of the will she had ceased to live in the testator's family, by reason of his discontinuing house-keeping, and at the time of the execution of the will she resided in Monroe county, at a distance from the residence of the testator, who had not seen her for some four years, and did not then know what her character was. At the time the legacy became due, the plaintiff was and still is of good character and reputation. At that time the wife of the testator, mentioned in the above clause of the will, "was and ever since has been, and still is, insane and demented and entirely devoid of reason and judgment, so that she is not capable of judging whether the said Susan is worthy of such a token of remembrance from said testator as he desired she should have, in case she was thus worthy."

*Lee & Hastings,* for the plaintiff.

*W. Barnes,* for the defendants.

*By the Court,* Davis, P. J. There can be no question, I think, but that the legacy is given upon a condition precedent, and that the plaintiff took no vested interest therein, upon the will becoming operative. It was directed to be paid in one year from the decease of the testator, "upon the express condition that the plaintiff should at the time be, in the judgment of his wife, worthy of this token of his remembrance." These are appropriate terms to create a condition

precedent. (*Robertson* v. *Caw,* 3 *Barb.* 418 ; *S. C.,* 1 *Seld.*
125. *Prest. on Leg.* 130. 2 *Will. Ex.* 785.) And there
are no words to be rejected as surplusage, to ascertain the tes-
tator's meaning. The circumstances stated in the submission
show that the intention of the testator was to make this be-
quest dependent upon the good character and conduct of the
legatee, and to create at the same time a tribunal whose de-
cision on that subject should be both necessary and final.
He had confidence in the moral integrity of his wife to believe
that she would judge favorably to the legatee if in point of
fact the latter should be worthy ; and he therefore left her to
judge, without any other trammel than her own sense of jus-
tice and right ; but he undoubtedly imposed on her the duty
of exercising, or rather expressing, her judgment. The con-
dition that the legatee should be so *worthy* of this token of
his remembrance as to secure the favorable judgment of his
wife, was obviously placed over the legatee *in terrorem* to
ensure her worthiness and good conduct. I think the case
shows that this object has been attained. When the legacy
became due, the plaintiff was, and still is, of good character
and reputation, but she has failed to comply with the condi-
tion, by obtaining the judgment of Mrs. Hunt, that she is
worthy of the legacy. This failure is through no fault of
hers, but is occasioned by the act of God. Mrs. Hunt was,
and is, as the case shows, "insane and demented and entirely
devoid of reason and judgment," and wholly incapable of
forming or expressing any judgment on the subject. We
must presume that if sane, and capable of judging, she would
have judged favorably to the plaintiff, because the facts be-
fore us would render such a judgment *right,* and all persons
are presumed to act rightly, till the contrary appears.

The case undertakes also to set forth "*the facts* upon
which the controversy depends ;" and we must assume, there-
fore, that the legacy to the plaintiff was not given *over* to any
other party, on the failure of the condition. If it had been
given over, I should regard *Caw* v. *Robertson* (1 *Seld.* 125)

Burns *v.* Clark.

as decisive in favor of the defendants ; but that fact being out of the case, that decision is not an authority in point. The question then is whether by the rules of law or equity governing such cases the plaintiff is entitled to the legacy, under the circumstances of this case, notwithstanding the non-compliance with the conditions of the bequest. Mr. Justice Story, in his Commentaries on Equity Jurisprudence, after referring to the contrariety of decisions on this subject, says : "But whichever of these decisions shall be deemed to main- ⁄ tain the correct doctrine on this subject, there is a modification of the strictness of the common law as to conditions precedent in regard to personal legacies, which is at once natural and convenient and promotive of the real intention of the testator. It is that where a literal compliance with the condition becomes impossible from unavoidable circumstances, and without any default of the party, it is sufficient that it is complied with as nearly as it practicably can be, or (as it is technically called) *cy pres.* This modification is derived from the civil law, and stands upon the presumption that the donor could not intend to require impossibilities, but only a substantial compliance with his directions as far as they should admit of being fairly carried into execution. It is upon this ground that courts of equity constantly hold, in cases of personal legacies, that a substantial compliance with the condition satisfies it, although not literally fulfilled. Thus if a legacy upon a condition precedent should require the consent of three persons to a marriage, and one or more of them should die, the consent of the survivor or survivors would be deemed a sufficient compliance with the condition." (*Story's Eq.* § 209. *Swinburne on Wills, pt.* 4, *p.* 262. 1 *Roper on Legacies, by White, ch.* 13, § 2, *p.* 691. *Clark* v. *Parker,* 19 *Ves.* 1, 16, 19.)

Judge *Willard,* in his work on *Equity Jurisprudence,* states the rule thus : "In case a condition precedent be impossible to perform, a different rule prevails in respect to legacies of personal property from that which obtains in rela-

tion to devises of realty. In the latter case, if the condition be impossible no estate vests, and the devise is void. In the former, as the rules of the civil law prevail, the bequest is single, that is, discharged of the condition." (*Willard's Eq.* 528.)

So far as I have had access to the authorities cited by these learned authors, they seem to justify their deductions.

In *Peyton* v. *Barry* (2 *Atk.* 625) the testator bequeathed the residue of his personal estate to Jane Styles provided she married with the consent of A. & B. his executors, and if she married otherwise, then the residue to J. N. One of the executors died. Jane afterwards married without the consent of the survivor. The master of the rolls held that the condition having become impossible, she might marry and take the legacy. He seems to have regarded the condition in that case as a condition subsequent, but apparently only for the absurd reason that it was *subsequent in order* in the will. The case is, if entitled to any weight, an authority for holding the condition precedent discharged by the act of God.

In *Thomas* v. *Howell* (*Salkeld*, 170) one devised to his eldest daughter on condition that she should marry his nephew, on or before she attained the age of twenty. The nephew died young. The daughter never refused and was never required to marry him. After the death of the nephew the daughter, then being about seventeen, married. Held the condition not broken; it having become impossible by the act of God.

In *Lovelass on Wills* (*p.* 334, *Law Lib.* v. 25, *p.* 179) it is stated that "where the condition becomes impossible by the death of the person whose consent was necessary to the marriage, the condition is discharged;" citing *Graydon* v. *Hick*, (2 *Atk.* 18.) And see *Knight* v. *Cameron*, (14 *Ves.* 389;) *Reynish* v. *Martin*, (3 *Atk.* 330.)

All the cases I have seen, arose on conditions in restraint of marriage; and it is not difficult to see that the decisions have been affected and perhaps induced, to some extent by

Burns *v.* Clark.

the hostility of the courts, and particularly of the ecclesiastical tribunals, to all restrictions of that kind ; but the condition being adjudged legal, there seems to be no sound principle that should not apply the same rule to conditions not relating to marriage. I see no reason why the rule should not be applied to this case and the plaintiff permitted to take the legacy, on performing the condition *cy pres.* She has, so far as in her power, complied with the requirement of the condition by so conducting herself as to become entitled to be adjudged worthy the testator's bounty. She was, at the appointed time, ready to have judgment pronounced on her worthiness, but by the act of God the person selected to judge is wholly incapable of acting. It could hardly have been the intention of the testator that in such case, being in fact worthy, she should lose the bequest, without fault on her part, by the interposition of death or disease. The severe logic of the common law might perhaps demand such a result, but the milder principles of the civil law, followed by the ecclesiastical courts and adopted by equity so far as relates to personal bequests, I think, allow us to reach a result which is, in the language of Justice Story, "at once rational, convenient and promotive of the real intention of the testator."

In my opinion judgment should be given for the plaintiff.

Judgment ordered accordingly.

[Erie General Term, February 10, 1862. *Davis, Grover* and *Hoyt,* Justices.]