JOHNSON V. JOHNSON.

1. **Evidence**: CONVERSATIONS WITH DECEDENT. The testimony of the wife of a party, to conversations between such party and one at the time of the examination deceased, is not rendered incompetent by section 3639 of the Code, that section being confined in its application to personal transactions and communications between the witness and the deceased.

2. **Conveyance**: VALIDITY: UNDUE INFLUENCE. Evidence considered and held insufficient to establish the invalidity of a conveyance of certain real estate by a father to his son.

*Appeal from Scott Circuit Court.*

WEDNESDAY, DECEMBER, 10.

ACTION IN CHANCERY. The original petition alleges that defendant induced his father to execute a deed to him for twenty acres of land in consideration of the payment to plaintiff, a brother, of an annuity of fifty dollars a year during plaintiff's life; that defendant's agreement to pay the annuity was reduced to writing, and defendant has obtained possession of the paper and refuses to produce it. It is also alleged that, prior to the execution of the deed, the father had made a will devising a part of the land to plaintiff, which was known to defendant; that the father has departed this life, and it was the intention of the parties that the annuity provided for should be secured upon the land. The relief asked is that the annuity be declared a lien upon the land, and that defendant be required by proper decree to pay the same.

Amendments to the petition were filed alleging that prior to the execution of the deed the father executed a will devising the land to defendant on condition that he pay an annuity for life of fifty dollars a year to plaintiff, and also pay one hundred dollars each to Margaret R. Stewart and Anna J. Jameson, sisters of defendant, and further pay all debts owed by the father. It is alleged that defendant with his family went to live with the father, and afterwards induced him by undue influence to execute a deed; that the deed was executed under an agreement of defendant to pay the legacies specified in the

will, and that it was intended to be delivered after the father's death as a more economical manner of carrying out the intentions of the father. It is also charged that the deed and will were in the possession of defendant, who, after the death of the father, secretly burned the will and caused the deed to be recorded, and that he now refuses to pay the sums provided for as aforesaid. It is also alleged that plaintiff is of infirm health, etc., and is dependent upon charity for support, etc. The relief asked is that the deed be declared void and the will be admitted to probate and established, and that a proper decree be rendered requiring the payment of the legacy. Mrs. Stewart and Mrs. Jameson filed a petition of intervention alleging that the deed was executed to defendant in consideration and upon condition that defendant pay to each of them $100. They ask for judgment for that sum in favor of each, and that the same be declared to be a lien upon the land.

The defendant answering the several petitions of plaintiff and of the intervenors and denied the allegations of each. He alleges that the land was conveyed to him in consideration of his promise and undertaking to support his father in a comfortable manner during his life, to pay him $100 each year, should he desire to visit any of his other children, and after his death to pay all his debts and $100 to the husband of each of his sisters, the intervenors in this action. The answer alleges performance of some of these conditions, viz.: the support of the father and payment of his debts.

Upon the final hearing on the merits a decree was entered granting the relief prayed for in plaintiff's petition and in the petition of the intervenors. The deed was set aside and canceled on the ground that it was obtained by fraud and undue influence; the will was established and the land was charged with the annuity of $50 a year to plaintiff and with the legacy of $100 to each of the intervenors. From this decree defendant appeals.

*Thompson & French, D. B. Nash* and *Davison & Lane,* for appellant.

*Bills & Block,* for appellees.

BECK, CH. J.—I.   The controlling questions in the case, in our opinion, relate to the validity of the deed executed to defendant by his father.   Was that instrument executed without fraud and undue influence, and is it a valid instrument?   The determination of these questions will dispose of the case. Their solution, it will be found, rests wholly upon facts.   If the deed is a valid instrument, the plaintiff will not be entitled to the relief granted by the decree.

The case is quite voluminous as presented for our consideration, the abstract containing more than one hundred printed pages, the argument of defendant more than one hundred and thirty, and the argument of plaintiff more than fifty.   It will be quite unnecessary for us to discuss the testimony with the minuteness and particularity which we find exhibited in the arguments of counsel.

II.   The father of defendant executed the deed in controversy on the 7th of July, 1873.   He was advanced in years, being about eighty at the time.   He was a man of at least ordinary ability and strength of mind.   At the time the deed was made no decay of intellect or absence of the power of will were noticeable in him, other than is usual with persons of his age.   A few weeks prior to the execution of the deed his wife had died.   This bereavement affected his spirits and undoubtedly his health.   But we find no evidence authorizing the conclusion that he was not perfectly competent to transact business, and that he was in any unusual degree susceptible to influence upon his action.

The defendant, a few months before the death of his mother, had been invited by his parents to live with them.   They were without a family and felt the burdens of age which requires the assistance and sympathy of children or friends.   After defendant and his family had taken up their abode with his parents their relations were ordinarily pleasant and satisfactory. The father had a few years before made a will devising the land described in the deed, which was the only real estate owned by him, to defendant on the condition of the payment to plaintiff of fifty dollars a year during his life and one hun-

dred dollars to each of his daughters, the intervenors in this action.

It appears that after defendant came to live with the father, his intentions in regard to the settlement of his property as fixed by the will were changed. It clearly appears that the deed was executed in pursuance of an intention on his part to give the real estate to defendant in consideration of his support during life and the payment of his debts and $100 to each of his daughters. We will not attempt to discuss the testimony in order to support this conclusion of fact which we think has ample warrant in the evidence.

It cannot be doubted that the father possessed the power to make a disposition of the property as he did by deeding it to defendant. The will was *ambulatoria voluntas;* the deed was a disposition of the property that, of necessity, operated to annul the will as far as it covered the property conveyed. As the deed was made without undue influence or fraud, and in all other respects is valid, it conveyed the real estate absolutely to the defendant, notwithstanding the will.

III. Counsel for plaintiffs insist that the testimony of defendant and his wife, in regard to the contract and arrangement between defendant and his father, is incompetent, under Code, section 3639, so far as it tends to establish the same by personal transactions, communications, or conversations between them. This provision, it is insisted, renders not only the evidence of the defendant, but also of his wife, incompetent. Proper and timely objections were made to this evidence. It must be admitted that, as to the testimony of defendant, they were well taken; as to the testimony of the wife, other than such as related to personal transactions and communications between herself and deceased, we think they were not. The wife testified to conversations and communications between defendant and his father that clearly established the contract and arrangement upon which defendant relies in this action. She took no part in these conversations, and the communications were not addressed to her; she was a mere listener thereto. In our opinion this testimony is competent, and the decided prepon-

*1. EVIDENCE: conversations with decedent.*

derance of the proof is in favor of defendant. We will briefly state the grounds of this conclusion:

The statute above cited, Code, section 3639, provides that "no party to any action or proceeding, nor any person interested in the event thereof,    *    *    *    *    *    and no husband or wife of any said [such] party, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased,    *    *    against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person    *    *    *    *    *    *    ." It will be observed that personal transactions or communications which, under this provision, may not be testified to by the wife, are those which were made between her and the deceased person. She is not incompetent to testify thereto if the communications and transactions were had between the deceased and her husband. Such is the express language of the statute, and we possess no authority to extend its application to cases not within the contemplation of its terms. Similar provisions in the statutes of other states have received interpretations by the courts to the like effect. *Simmons v. Sisson*, 26 N. Y., 264; *Lobdell v. Lobdell*, 36 N. Y., 327; *Hildebrant v. Crawford*, 6 Lansing, 502.

IV. It is argued, with a great deal of confidence, that the transaction or contract between defendant and his father is

2. CONVEY-
ANCE: valid-
ity: undue
influence.

uncouscionable, and the deed is without consideration. We cannot assent to this proposition. The only testimony as to the value of the property conveyed fixed it at about $1,500, which we think, considering other testimony in the case, is an exceedingly liberal estimate. In consideration of the property defendant undertook to support his father during his life, to allow him $100 a year when he visited his daughters, to pay off all his debts, and pay $100 each to his two daughters. If the father had lived several years, according to the probabilities when the deed was executed, it would have been a hard contract for defendant; as the father died in about eighteen months, it resulted favorably

to defendant. In view of the expectancy in life of the father, and of the sums to be paid to the daughters and in discharge of debts, though they seem to have been inconsiderable, the contract was not unconscionable, or even a hard bargain, and surely was not without consideration.

V. Plaintiff insists that the testimony establishes an agreement upon the part of defendant to pay to plaintiff an annuity of $50 per year in lieu of provisions made for him in his father's will. The testimony relied upon consists mostly in declarations or admissions made by defendant after his father's death. They are uncertain, indefinite, and very general in their terms, as testified to by the witnesses, defendant's brother and his wife; they are denied by defendant. The contract, as testified to by defendant's wife, contains no such provisions. The declarations of the father, to the effect that he intended to make a disposition of his property different from that of the will, and other facts given in evidence, are inconsistent with such a contract. The further fact must be considered that defendant, if plaintiff's claim be true, in addition to the support of his father for life, the payment of his debts, and $200 to his sisters, obligated himself to pay an annuity for life to a brother, aged about forty-five years, in consideration of the conveyance of twenty acres of land, worth, with the improvements, not more than $1,500. Such a contract, in our judgment, no reasonable man would make. But we are of the opinion that the evidence fails to establish that such a contract was in fact made.

VI. We need not inquire whether the will, as to other provisions contained therein, is valid, and ought to be enforced. The defendant admits that he is bound to pay the husband of each sister $100; the sisters claim that the payment shall be made to them. The only difference between the parties is as to whether the payment shall be made to the sisters or their husbands. We think the decree as to these sums may stand with this modification, namely: the payments provided for in the decree shall be made, upon the husband of each of the intervenors joining in the execution of a receipt for the money when paid by defendant. The rights of all parties will be

protected in this way. The petition of plaintiff will be dismissed, and the decree in favor of the intervenors will be affirmed, with the additional provision just suggested, that the husbands of the intervenors shall join them in executing proper receipts upon the payments to be made by defendant.

We have not attempted to discuss fully the testimony, which could not be done satisfactorily without an opinion of greater length than would be profitable to either of the parties or the profession. We are not accustomed, in cases of this kind, depending wholly upon facts, to do more than state our conclusions.

The petition of plaintiff is dismissed, and the decree of the court below as to plaintiff's case is reversed.

The decree upon intervenor's petition is affirmed, with the modification above stated. Plaintiff will pay all costs.

Reversed as to defendant's appeal. Modified and affirmed as to intervenors' appeal.