In the Matter of the ESTATE of Ernest BEAVER, Deceased.

Ida Mildred ZAJEC et al., Appellees,

v.

Merl BEAVER and Merl Beaver, Executor of the Estate of Ernest Beaver, Deceased, Appellants.

No. 55501.

Supreme Court of Iowa.

April 25, 1973.

McCoy, Faulkner & DeCook, Oskaloosa, for appellants.

Heslinga & Heslinga, Oskaloosa, for appellees.

UHLENHOPP, Justice.

Does Merl Beaver have an option to purchase 80 acres of land formerly owned by his father, Ernest Beaver? Is Ida Zajec entitled to the proceeds if Merl Beaver exercises the option or to the 80 acres if he does not exercise it? These are the questions in this de novo appeal.

Testator Ernest Beaver was born in 1877 and died in 1970. He and his wife had four children, Merl, Zilpha, Grace, and Marie. His wife died many years ago, and he did not remarry. After her death he lived in a home he purchased in Eddyville, Iowa.

Upon achieving adulthood, Merl married and thereafter farmed. Zilpha and Grace, who never married, lived from birth with their father in his home, except that Zilpha was away during the weeks she taught school. Marie married one Randell; in 1928 had a daughter, Ida; and in 1930 died. From 1930 until her adulthood, Ida too lived in testator's home. In 1952 she married Frank Zajec, and they have since lived on a farm she owns.

Testator owned 380 acres of land in two tracts, the west place and the home place. At various periods in the past, he operated all or part of the land. For a number of more recent years, Merl has operated the home place. His son presently operates the west place.

At one time testator gave Merl an acre of the home place for a homesite. Testator also conveyed his Eddyville home to Zilpha and Grace by deed effective at his death, and he deposited $3,000 in an account with Grace as joint tenant. In addition, during his lifetime he gave substantial sums of money to Merl, Zilpha, Grace, and Ida.

In 1948 testator was 71 and Ida was 20. At that time his home place contained 220 acres. His west place consisted of 160 acres, and Merl owned an adjoining 40-acre tract. Testator desired to devise

his land in such way that Zilpha and Grace would have their land in one parcel and Merl could acquire the home place. He also desired to make a gift to Ida—although he recognized that her branch of the family had already received more from him since he reared both Marie and Ida. In addition, Ida owned her own farm.

Testator conceived the plan of trading to Merl 40 acres in the home place (thereby reducing the home place to 180 acres) in exchange for Merl's 40 acres adjoining the west place (thereby increasing the west place to 200 acres); of devising to Zilpha and Grace the west place of 200 acres; of devising to Merl 100 acres in the home place; and of granting Merl the right to purchase the remaining 80 acres in the home place for $16,000, with such proceeds, together wtih the income from the 80 acres until Ida became 30, going to her. Testator proposed that plan to Merl.

Testator then went to Attorney Thomas J. Bray in Oskaloosa, Iowa, who drafted the instruments. On November 29, 1948, testator, Merl, and Merl's wife went to Mr. Bray's office. Mr. Bray read the will he had drafted and stated that the option and trust fund in it were "arranged for all right." He asked Merl if the arrangements were agreeable to him, and Merl said they were. In fulfillment of testator's plan, Merl then conveyed his 40 acres to testator, testator conveyed his 40 acres to Merl, and testator executed the will. (In 1950 testator executed a new will which was the same except for a corrected legal description. He never again changed his will.)

In the will as drafted, testator gave Zilpha and Grace the west 200-acre place and gave Merl 100 acres in the home place. In Item Three he devised the remaining 80 acres in the home place in trust. For present purposes, the material portions of the trust relating to the 80 acres are these:

(c) When my said granddaughter, Ida Mildred Randell, attains the age of thirty (30) years, or at the date of her death if she shall die before attaining such age, I grant unto my son, Merl Beaver, an option to purchase said real estate for the price of Sixteen thousand ($16,000.00) Dollars, to be paid by him to my said Trustee in cash at the time of exercising said option. Said option shall be exercised by my said son within thirty (30) days after my said granddaughter attains the age of thirty years or within thirty (30) days after her death, if she dies before attaining such age by giving a written notice to my said Trustee of his intention to so exercise said option. If my said son shall not be living at the time the said option is to be exercised, then I grant to his legal representative the right to exercise said option with the same force and effect as if my said son were living at said time. If my said granddaughter lives to be thirty years of age, then upon attaining such age I direct my Trustee to turn over to her all the money then in the hands of my Trustee belonging to said trust estate, including the money to be paid by my said son or his estate for the real estate hereby devised to said Trustee, if the option to purchase the same shall be exercised. If said option is not so exercised, then I direct my said Trustee to execute a good and sufficient deed conveying said real estate to my said granddaughter, Ida Mildred Randell.

(d) If my said granddaughter, Ida Mildred Randell, does not live until becoming thirty years of age, then at her death I give and devise the real estate herein devised to my said Trustee to my son, Merl Beaver, and to my daughters, Zilpha Beaver and Grace Beaver, share and share alike, to be their own absolutely, in the event my son, Merl Beaver, does not exercise the aforesaid option, in which event I direct my said Trustee to execute a good and sufficient Trustee's deed conveying said real estate to said devisees. If said option is exercised by him, then I give and bequeath the money paid by him for said land and all

other money in the hands of my Trustee to my son, Merl Beaver, and to my daughters, Zilpha Beaver and Grace Beaver, share and share alike, to be their own absolutely, and direct my said Trustee to make distribution accordingly.

Under Item Three the trust estate was also to include any income from the 80 acres from the inception of the trust until Ida became 30 and also one-fourth of testator's estate not specifically devised. Zilpha was named trustee if she survived, as she did. The residuary clause in the will gave the rest of testator's property equally to Merl, Zilpha, Grace, and Ida.

Item 3 gives the impression that testator and his scrivener assumed testator would die before Ida became 30. The item deals with several contingencies on that assumption—exercise of the option if Ida lived to age 30 or if she died before 30 or if Merl died before time for exercise of the option. It also deals with accumulation of income by the trustee until Ida became 30. But the item nowhere states what testator intended should happen if testator died after Ida reached 30.

Testator died on August 8, 1970. He was 93 years of age and Ida was 41. His will was admitted to probate. On September 3, 1970, in the presence of Zilpha, Grace, and Ida, Merl tendered his check for $16,000 and written notice of exercise of the option. The tender was not accepted, although no objection was made to the medium of payment. The next day, in writing, Merl repeated the exercise of option, and he tendered payment "upon good and sufficient conveyance of said land." The tender was not accepted.

Thereafter Zilpha, Grace, and Ida commenced this action to construe the will. They claimed the option did not come into existence because Ida was past 30 when testator died and under the will the option had to be exercised within 30 days of Ida's thirtieth birthday or within 30 days of her demise before she became 30.

Merl filed answer and counterclaim. He made three contentions. First, the option in the will came into existence on the death of testator. Second, in any event testator contracted to make a will giving Merl an unconditional option to buy the 80 acres for $16,000. And third, the gift to Ida in Item Three lapsed when she became 30 prior to testator's death.

After trial the trial court held for Zilpha, Ida, and Grace. Merl appealed. The parties take the same positions here that they took in the trial court. The clerk of the district court has custody of Merl's check for $16,000.

■ I. *Option Under the Will.* Options must be exercised within the time prescribed by their terms unless failure to do so results from the act of the optionor. Steele v. Northup, 259 Iowa 443, 143 N.W. 2d 302. The problem here, however, is different. Merl endeavored to exercise the option within 30 days of testator's death, but the question is whether the option under the will came into existence at testator's death.

The case involves the problem of impossibility of literal compliance with a clause in a will because of events which occurred after execution of the will—in this case, after execution but before the will took effect at testator's death. In some instances that impossibility renders a gift void, while in others literal compliance is excused or, more accurately, the clause is held not to be a condition to the gift as events come to pass. Restatement, Property, § 438, Comment b ("Under this approach there is no nonperformance to be excused, since there has been performance of the limitation as judicially ascertained.").

The starting point is the general principle that "The intention to create a condition in a will must clearly appear, for the courts will not construe a testator's words as importing a condition if a different meaning can be fairly given to

them." 57 Am.Jur. Wills § 1503 at 1016, 1017. See also 96 C.J.S. Wills § 976 at 463–464.

When literal compliance with a clause in a will has become impossible, a court must ascertain from the will and the surrounding circumstances whether the testator would or would not have intended the gift to fail for such noncompliance, had he thought about the impossibility at the time he imposed the restraint. As stated in Restatement, Property, § 438, Comment c, "Where impossibility is offered as an excuse for nonperformance, the construction process required under the stated rule is a judicial inquiry, not as to what the conveyor actually intended, but as to what his intent would have been had he known of or anticipated the impossibility at the time he imposed the restraint (see § 241, Comment c)."

In thus judicially ascertaining a testator's intent, a number of factors are considered. The will may in fact show that the testator actually anticipated the impossibility and nonetheless made the gift contingent on the occurrence of the event. Then, of course, the event must occur or the gift fails. E. g., Merrill v. Wisconsin Female College, 74 Wis. 415, 416, 43 N.W. 104 ("I give and bequeath to Wisconsin Female College, located at Fox Lake, Wis., five thousand dollars, ($5,000), *provided that the trustees have changed the name before my decease* to Downer College, in memory of my husband."—italics added). Other factors are whether the impossibility arose from the voluntary act of the beneficiary or from events beyond his control, or whether the impossibility arose out of personal conditions or external circumstances. Still another factor is the motive of the testator—whether his purpose in making the gift would more likely be fulfilled by requiring or not requiring literal compliance. See Restatement, Property, § 438, Illustration 3 (gift of testator's law library to son on condition he become a lawyer, which he did not do—gift fails). See also Comments *c, d, e,* and *f* to such

section; Simes, The Effect of Impossibility Upon Conditions In Wills, 34 Mich.L. Rev. 909. The leading case is In re Bridge's Estate, 41 Wash.2d 916, 253 P.2d 394 (gifts to individuals if they were testator's employees at his death but he went out of business before he died—gifts upheld). See also Burns v. Clark, 37 Barb. 496 (N.Y.) (upon condition the beneficiary become a worthy person but he became mentally incompetent—gift upheld); Boggess v. Crail, 224 Ky. 97, 100, 5 S.W.2d 906, 908 (gift conditional on son's living with testator's widow but she did not want him to do so—"If nonperformance was not the fault of the grantee, but the result of conditions over which he had no control, the grant is not defeated."); In re Lipiec's Will, 37 Misc.2d 747, 236 N.Y.S.2d 199 (take care of testatrix until her death but she entered hospital—gift upheld); In re Andrews' Will, 34 Misc.2d 432, 228 N.Y.S. 2d 591 (take care of testator's dog until its death but dog predeceased testator—gift upheld); In re Estate of Gernsheimer, 147 N.Y.S.2d 569 (Sur.) (to be employed by testator's company but company went out of business before testator died—gift upheld); In re Costalo's Will, 167 Misc. 755, 4 N.Y.S.2d 665 (live with testatrix until she died but she became incompetent—gift upheld).

What was testator's intention here? The option to Merl and the gift to Ida are inextricably interwoven in Item Three. Merl was to exercise or not exercise the option when Ida became 30 (unless she died sooner). Ida was to receive the proceeds when she became 30. She was to receive the land if the option was not "so exercised." Those words "so exercised" appear to mean that the option existed but Merl did not exercise it—testator did not say Ida was to receive the land "if the option does not come into existence" or "if I die after Ida becomes 30." Thus neither the right given to Merl nor the gift made to Ida can be literally fulfilled, for she was 11 years past 30 when the will took effect. Is Item Three therefore to fail?

We think not. The will and the circumstances do not show that testator actually anticipated Ida would be past 30 at his death. On the contrary, Ida's mother died before she was 30 and testator expressly dealt with the contingency that Ida also would do so. Testator was 71 when he made the will in 1948; he would likely die before Ida became 30. Cases showing the testator actually contemplated the impossibility, like the Wisconsin Female College decision, are not analogous; this will contains no corresponding provision, "provided that Ida becomes 30 after my death."

The impossibility of literal compliance with Item Three by Merl and Ida did not arise from their voluntary act but from external forces beyond their control. Moreover, no evidence shows testator had a purpose which would be fulfilled only if Ida became 30 after his death. The evidence shows the opposite; he wanted Merl to be able to acquire the home place. Testator was satisfied with the price in the option. He had borne the expense of raising both Ida and Ida's mother, and he knew Ida already had a farm of her own. In addition, he added to Ida's gift in Item Three one-fourth of the property not specifically devised.

What about testator's knowledge that Ida became 30 in his lifetime and his failure thereafter to revoke Item Three? Is this a circumstance showing intent that the rights and interests of Merl and Ida fail? To the contrary, "When such knowledge is acquired after the execution of the instrument of conveyance but before its effective date, as in the case of knowledge acquired by a testator subsequent to the execution of the will and before his death, failure to revoke the instrument normally tends to an inference that the gift was to take effect despite the inevitable failure of its terms." Restatement, Property, § 438, Comment g. See also In re Bridge's Estate, supra, 41 Wash.2d 916, 934, 253 P.2d 394, 404 ("it would appear most probable that the testator never realized that his will might be interpreted in the manner which appellant here seeks to interpret it").

A case very similar to the present one is Evans v. Stratford, 2 Hem. & M. 142, 71 Eng.Rep. 416. That was a suit in Chancery in which a testatrix gave land to her husband for life, with remainder in trust for her daughters. In her will, executed in 1852, the testatrix gave her son an option to purchase the land from the trustees by notifying them of his acceptance within 12 months after the death of the testatrix' husband. But the testatrix' husband died in July 1861 and the testatrix died in April 1863, never having changed the will. Within 12 months after her death—more than two years after the death of her husband—her son endeavored to exercise the option. Counsel opposing the option argued that "the testatrix has not provided for the event of her husband predeceasing her, but that does not enable the Court to do it for her." But the court held that the existence of the option under the contingency of the husband's prior demise was governed by the testatrix' dominant intent that the son was to have the right to buy the land from the trustees. The court considered, under the circumstances as they developed, that the testatrix' overriding intention was the option should come into existence upon the commencement of the trust for the daughters. See also Austin v. Tawney, L.R. 2 Ch. 143.

The court adopted the same rationale in Megery v. Selymes, 14 Ohio App.2d 28, 235 N.E.2d 725. A testatrix made a gift to be fulfilled in four installments at the beneficiary's ages 18 to 21, in the hope the gift would be used for his education. But the beneficiary was 23 when the testatrix died. The court held the time for payment was not a controlling factor and the testatrix' intent was that the beneficiary should have the gift. See also Martin v. McCune, 318 Ill. 585, 149 N.E. 489 (beneficiaries to receive gifts after the testator's daughter became 18 but the testator lived beyond that time—gifts upheld); Re Lee, (1955) 4 D.L.

R. 344 (Ont.), aff'd (1955) 1 D.L.R.2d 48 (gift to be used for education of nephew with surplus to him after he graduated from the university, but he never attended the university and was 39 when the testator died—gift upheld).

In ascertaining the testator's intent in the Megery case, the court relied on the analogy of decisions involving age and the vesting of estates. Those decisions are likewise analogous here. They hold that a gift may be *contingent* upon the occurrence of the specified age at a particular time, or enjoyment of the gift may merely be *suspended*. The decisions consider the character of the words used in connection with the specified age. Strong words like "provided," "if," and "in case" tend to show an intent that the gift is contingent; while words like "when," "as soon as," "at," "upon," and "after" tend to show enjoyment is merely deferred. Likewise, the presence of an express gift over if the age clause is not met shows that the gift is contingent, while the absence of such a clause points the other way. The decisions are gathered in Annot. 71 A.L.R. 1051. In the present case the words are of the latter category—"when" and "after." Moreover, testator inserted no gift-over clause, such as "If I die after Ida becomes 30, then," etc. These factors tend to show the option and the trust were not intended to be contingent on Ida's becoming 30 after testator's death but rather that enjoyment was merely delayed.

In the present case the three women devisees do not claim, of course, that Item Three lapsed. They are self-contradictory at this point. They read Item Three literally as to Merl, but seek testator's intent as to Ida. We think they are right in seeking testator's intent and in claiming Item Three survived although Ida was past 30 when testator died. But reading the will according to testator's intent works both ways—for Merl as well as for Ida. Under that reading, at testator's death the 80 acres and one-fourth of the property not specifically devised passed under Item Three to the trustee. Going farther with that reading under the circumstances which developed, we believe, as the court correspondingly did in the Evans case, that testator's overriding intent was the option should come into being at the commencement of the trust at his death. The dominant intent was to create the trust for Ida and to grant the option to Merl. That intent is to be given effect as to both Merl and Ida, notwithstanding impossibility of literal compliance with the will as events worked out.

We hold, therefore, that Merl's option existed under the will. His exercise of the option was sufficient in form. Figge v. Clark, 174 N.W.2d 432 (Iowa). The will gives him the right to a good and sufficient deed.

II. *Option Under the Contract.* A contract to make a will, if proved, is enforceable. Stewart v. Todd, 190 Iowa 283, 173 N.W. 619, 180 N.W. 146. If the evidence of the contract rests wholly in parol testimony, the proof must be clear, satisfactory, and convincing. Hatcher v. Sawyer, 243 Iowa 858, 52 N.W.2d 490.

We have examined the evidence carefully in connection with Merl's contention that testator contracted to grant him an option to purchase the 80 acres for $16,000 without any condition that testator must die before Ida became 30. Over the objection of the dead man's statute, Merl testified at length regarding the contract. We have disregarded all of that testimony. Code 1973, § 622.4.

We have also studied the testimony of Merl's wife. Under her testimony, she was a competent witness within the rule laid down in Johnson v. Johnson, 52 Iowa 586, 3 N.W. 661.

Merl's wife testified about a conversation between testator and Merl in which testator explained the plan he desired for his will—including the devises to Zilpha, Grace, and Merl, the option to Merl, and the gift to Ida—if Merl would be willing to ex-

change the forties to make the plan possible. She also testified about a conversation at the office of Attorney Bray in connection with the plan.

■ Were proof of the contract wholly dependent upon the wife's testimony as to the conversations, we doubt that it would rise to the level of clear, satisfactory, and convincing evidence. But the proof does not entirely rest upon that parol testimony. The documents drafted by Mr. Bray, which were executed and carried into effect, strongly corroborate the parol testimony. The documents consist of two deeds and a will which are along the lines of the conversations. The three instruments are of even date. The notary on the deeds was also a witness on the will. In one deed Merl conveyed his 40 acres to testator, and in the other deed testator conveyed his 40 acres to Merl. This enabled testator to carry out his plan. He could give 200 acres in one parcel to Zilpha and Grace and enable Merl to hold the home place together by a gift of 100 acres and an option to acquire the other 80 acres. We find from all the admissible evidence that a contract was made as Merl contends. The contract contained no requirement that the option was exercisable only if testator died before Ida reached 30. To any extent that the will might be claimed to be otherwise, the contract would control. Hatcher v. Sawyer, 243 Iowa 858, 52 N.W.2d 490.

■ The contract was fully performed by Merl for his part when he conveyed his 40 acres to testator. Hence the statute of frauds is not involved. Hatcher v. Sawyer, supra.

III. *Lapse of Trust.* What we have already said disposes of Merl's contention that the provisions for Ida in Item Three were dependent upon testator's dying before she became 30. In this instance Merl is engaging in self-contradiction. Just as testator's overriding intention was that the option should survive, so it was that the trust should survive. The trust will not

be long-lived, but it came into existence in fulfillment of testator's dominant intent.

The case must be returned to the district court for decree adjudging that the 80 acres and one-fourth of the property not specifically devised passed to the trustee, directing the clerk to deliver Merl's check for $16,000 to the trustee, and requiring the trustee to convey the 80 acres to Merl.

Reversed and remanded.

All Justices concur except LeGRAND, J., who dissents.

LeGRAND, Justice (dissenting).

I cannot agree with the conclusion reached by the majority.

As in most disputes involving the construction of wills, the question reduces itself to whether we are giving effect to the testator's intent, obscure but nevertheless present, or whether we are making his will over to conform to *our* notions. The majority says it has done the former, which is permissible; I say it has done the latter, which is not.

I find nothing in the record to support what the majority fixes as the testator's intent. To say, as the majority does, he "thought" his granddaughter would die before she reached 30 because her mother did is hardly the stuff upon which such a decision should rest. Similarly to say, again as the majority does, the testator did not contemplate the possibility she might reach that age before his death is so unlikely that it cannot form a reasonable basis for determining testamentary intent.

If there is anything of which one is aware when executing his will, it is the uncertainty of life, both his own and that of an intended beneficiary. Usually it is this insecurity which motivates a testator in the first place. It is sheer speculation for this court to decide now that this testator did not contemplate such an elementary fact— that his granddaughter might reach 30

years of age while he was still alive—and to announce what his intent would have been if he had.

It is far more reasonable to say the provisions of Item III should be read as they are written without a tortuous searching for something that is not there. There is nothing to suggest otherwise except the majority's gratuitous statement which attributes an unexpressed intent to Ernest Beaver posthumously for reasons which are both insubstantial and unpersuasive.

I believe the trial court reached the right result, and I would affirm.