## Sower *versus* Weaver.

1. To establish a parol gift of land, the evidence must be direct, positive, express and unambiguous.

2. Sower brought ejectment on his legal title against Weaver, who set up a parol gift; the evidence of it was the testimony of himself and wife. Sower by his testimony contradicted theirs.  *Held*, that Weaver and wife being but as one witness, the testimony of another witness or its equivalent, was necessary to establish the defence.

3. In equitable ejectments, and equitable defences set up at law to legal titles, the same rule and measure of justice is to be applied, whether the proceeding be at law or in equity.

4. The facts testified to by Weaver and wife, not sufficient to establish a parol gift.

5. Ackerman *v.* Fisher, 7 P. F. Smith 457 ; Dollar Savings Bank *v.* Bennett, 26 P. F. Smith 402, adhered to.

May 7th 1875.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *York county:* Of May Term 1875, No. 78.

This was an action of ejectment, brought April 2d 1873, by George Sower against Henry Weaver, for a tract of land in Washington township, containing about 64 acres.   The defendant is the husband of Elizabeth, late Sower, a daughter of the plaintiff.

[Sower *v.* Weaver.]

The cause was tried January 26th 1875, before Fisher, P. J.

The plaintiff gave in evidence a patent from the Penns to George McMillan, dated December 6th 1871, for 193 acres in Washington township, York county. Deed: Enos McMillan and others, heirs of George McMillan, to George Sower, dated March 15th 1834, for 150 acres, part of the above tract. Deed: George Sower to his son John Sower, dated March 31st 1846, for 90 acres, 109 perches, part of the 150 acres. The premises in dispute are the remainder of the 150 acres.

He further gave evidence that he built a house on the land in dispute previously to 1846, that defendant had been living on that land since 1847, and had built a barn on it; plaintiff gave defendant money to pay on the barn.

On the 9th of September 1853, the plaintiff conveyed 40 perches of the land—part of that occupied by defendant—to the Washington School District. The evidence was that this conveyance was with the assent of the defendant.

The plaintiff's deposition was read: He testified in answer to the question, "How came the defendant into possession of the premises in dispute?" that "defendant was married to plaintiff's daughter; he held for a home. I said to him I did build him a house on it, and told him he might have it for eighteen years, and might have all he raised on it; that was about twenty-six years ago; he was to build a barn and pay all the taxes; he took possession about two or three months after we made the bargain; he built a barn but I had to pay the most of it, his credit wasn't present. When the eighteen years were up they complained that I had given the boys homes and they had nothing. I proposed to give it to them as I had given the land to the boys, that is, at what it was assessed at by the assessor. All Weaver said was, he'd like to have it for his own, but he could not take it. I had no conversation with him about it after that. After the eighteen years I said he must now pay me rent, either the third bushel or $50; he said not a word. I demanded rent several times; he never said a word. Weaver built nothing except the barn; he fenced, and improved, and limed it a very little." There was other evidence for plaintiff of a somewhat similar character.

The plaintiff rested.

Under objection and exception the defendant's wife testified:—

"I married Henry Weaver thirty-four years. Father said he would divide the farm where John lived on, and build a house if we would go on; I told him I did not want to go there, I could not be at home, and he told me he would build a house on it, and if I was there once and had my stuff there I would be at home; I told him the land was too poor, we could not live on it; he said I could make it good; we went on the land; there was no house on the land at the time he gave me the land; my father

[Sower *v.* Weaver.]

helped to build the house; he got the carpenter-work of the house done; Weaver, my husband, got the other part of the work done; he dug the cellar and had all the mason-work done which was done to the house; we moved in on Whit-Monday of 1846; the work was all finished, but the plastering was not dry; Weaver put up the barn in 1846; we have been living there ever since; when we went there the land was as poor as could be; we could not have lived upon what the land produced at that time; I do not know that George Sower did anything towards building the barn; Weaver employed the workmen to build the barn; Weaver paid them; Weaver paid the taxes on the land; Weaver made fences, put lime on it; all the manure that we raised he put on; one year he got guano; the guano was put on the ground; there is an orchard there, only one; we planted the trees; no garden there; one there now; Weaver laid out the garden and fenced it—it is a clap-board fence; we planted fruit-trees; no well there; there are two wells there; we dug the well." The witness testified in direct contradiction of the plaintiff as to his permitting them to have the property for eighteen years; as to their asking him at the end of eighteen years for a home; his demanding rent, &c.

The defendant testified: "I was married 9th November 1841; I took possession of the farm in the spring of 1846; I dug the cellar of the house; I moved on in the fall of 1845 and walled a part of the cellar; finished walling it in the spring; I got hands to help me dig it and hands to build the wall; in the spring I dug the foundation of the kitchen, and had stone hauled there, and put the lime and the brick there for the masons; I employed the workmen and paid them too; Sower had the wood-work done by the job; Sower paid for the wood-work, but promised to do all the wood-work; the same year I built a barn; I employed the men to build the barn and paid them; I furnished the lumber for the barn; Sower did nothing towards building the barn; I got the wood for the frame-work; I paid for the timber and in the construction of this barn; I never got any money of Sower to build this barn I built; since the barn was built I built a wagon-shed and a corn-crib attached to it, and two other buildings; I sank one well, one at the house and one a little way from the barn; I paid for them; I planted an orchard and shade trees about the house; the land was very poor when I went there; the fences in bad condition; when I first moved there I could not raise enough to feed my family; I can now make a living."

He further testified that on one occasion when the assessor asked the plaintiff to whom the land was to be assessed, he said to defendant, he had given it to him and his wife. He testified also, that he had put much manure on the land, and increased its value from $5 per acre to $45, according to the assessed value. He

[Sower *v.* Weaver.]

also testified in direct contradiction of the material statements in plaintiff's testimony.

Also : " To George Sower I said it was hard for me to build there unless I knew what I was to do it for. He said he *did* give. it to me and my wife for our own, and with that understanding I went into possession. Then, in pursuance of that conversation, I dug the cellar and took possession, and put up the barn, and put up the garden fence, and made fences to keep the cattle out, and did work, and had more than I could do."

There was some testimony of indefinite statements of the plaintiff as to his having given defendant's wife the land ; also, that it had been assessed in his name for many years.

The plaintiff's third point and its answer were :—

The plaintiff acquired by his deed from the McMillan's heirs in 1834, a complete and perfect legal title to about 150 acres of land, of which the premises claimed in this suit constitute a part, and the evidence given by the defendant of an alleged parol gift of a portion of said land is indirect, uncertain, ambiguous and contradictory as to its alleged terms, as well as to metes and bounds of the land alleged to be given, and not sufficient in law to take the case out of the operation of the Statute of Frauds and Perjuries.

Answer : " The plaintiff acquired by his deed from the McMillan heirs in 1834, a complete and perfect legal title to about 150 acres of land, of which the premises claimed in this suit ·constitute a part ; but we cannot affirm that portion of the point which says ' that the evidence given by the defendant of an alleged parol gift of a portion of said land is indirect, uncertain, ambiguous and contradictory as to its alleged terms, as well as to the metes and bounds of the land alleged to be given, and not sufficient in law to take the case out of the operation of the Statute of Frauds and Perjuries,' as will be more fully explained when we come to answer the defendant's points, and as we have stated the law in connection with these facts in our general charge."

The following were points of the defendant which were affirmed :—

1. If the jury believe that the plaintiff made a parol gift of the land in dispute to the wife of the defendant in 1845, and that in pursuance thereof the defendant and wife entered into possession in 1846, built a barn and sheds, dug wells, erected fences, planted an orchard and other fruits trees, limed and manured the land and made other improvements, assisted to build the house, and remained in possession of the premises ever since, and the same was during all that time assessed in the defendant's name, that plaintiff at one time told the assessor to assess it in the name of the defendant, and at another time as assistant assessor joined in assessing it in the name of Weaver, stating at the time, I give it to Betz ;

[Sower v. Weaver.]

that if the jury believe further that the plaintiff has not accounted for such long-continued possession by the defendant and wife, then defendant is not to be held to the same rigid measure of proof as that which is required to sustain a parol gift recently made and the lapse of time is allowed to supply want of directness and distinctness of proof, although not to create evidence.

2. If the jury are fully satisfied from all the evidence in the cause of the fact of a parol gift by the plaintiff to his daughter in 1845, of the identity of the land, and extent of the gift, delivery of possession in pursuance of the gift, and the erection of valuable buildings and improvements by the defendant and his wife, that the land was assessed to the defendant from that time to the time of the bringing of this suit, of plaintiff joining in the assessment one year as assistant assessor, and at another time directed it to be assessed in the defendant's name and the defendant paid the taxes from the time of the bringing of this suit, and if the jury believe further that the plaintiff has not accounted for such long continued possession by the defendant, the plaintiff is not entitled to recover.

The verdict was for the defendant.

The plaintiff took a writ of error; he assigned for error the decisions of the court on the questions of evidence and the answers to the points.

*H. L. Fisher* and *W. C. Chapman*, for plaintiff in error.—The defence being in the nature of a bill for specific performance of a parol contract against a legal title, there must be no *doubt* about the facts : Brawdy v. Brawdy, 7 Barr 157 ; Moore v. Small, 7 Harris 461 ; Rankin v. Simpson, Id. 471 ; Poorman v. Kilgore, 2 Casey 365 ; Collins v. Collins, 2 Grant 117. Declarations and admissions of an alleged donor are the weakest kind of evidence : Robertson v. Robertson, 9 Watts 32. The evidence must be direct, positive and unambiguous : Ackerman v. Fisher, 7 P. F. Smith 457 ; Harris v. Richey, 6 Id. 395 ; Eckert v. Eckert, 3 Penna. R. 332.

*J. Gibson* and *V. K. Keesey* (with whom was *G. W. McElroy*), for defendant in error.—Where a donee has had a long and continued possession which is not satisfactorily accounted for, the proof required is not so strict as when the gift has been recently made : Willey v. Day, 1 P. F. Smith 57 ; Richards v. Elwell, 12 Wright 361 ; Mahon v. Baker, 2 Casey 519.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 17th 1875.

Had this case been tried below before the Act of 1869, and without the testimony of the defendant and his wife, there would have been literally no evidence to sustain the defence. There

[Sower *v.* Weaver.]

would have been nothing but a few vague declarations by the plaintiff, entirely consistent with a temporary family arrangement, by which the father built a house on his land and put his daughter and son-in-law in possession, to hold during his pleasure, and utterly insufficient to establish a parol gift.

Even the testimony of Weaver and his wife did not come up to the requirement of the rule that the evidence of the contract must be direct, positive, express and unambiguous: Ackerman *v.* Fisher, 7 P. F. Smith 457. A chancellor must look at the whole evidence, and in this case the uncontradicted fact that during Weaver's possession Sower sold and conveyed a part of the land with Weaver's knowledge and assent, for a school-house, would, of itself, contradict the inference of a parol gift. But how stands the case since the Act of 1869, and supposing that the testimony of Weaver and his wife made out the gift? The defence was a purely equitable one. Had the defendant gone into a court of equity for a specific performance, or for an injunction to restrain the plaintiff from pursuing his legal title to turn him out of possession, the denial of the plaintiff on oath of the equity of the bill would have compelled the complainant in the bill to sustain it by two witnesses, or what would be equivalent thereto. Here George Sower, under oath, fairly and squarely denied all the equity which Weaver set up. Admitting Weaver and his wife to amount together to one sufficient witness, where is the remaining witness, or that which is equivalent thereto? It is not to be found in the case. It is clear that this well established rule of equity must be applied in cases of this character, or the rule must be abolished on the equity side of the court. As long as equitable ejectments may be maintained and equitable defences set up at law to legal titles, we must see to it that the same rule and measure of justice be applied, whether the proceeding be at law or in equity. We adopted and announced this principle in the opinion in the Dollar Savings Fund *v.* Bennett, 26 P. F. Smith 402, decided at Pittsburg, November 1874, and it is our purpose to adhere to it.

Judgment reversed, and a *venire facias de novo* awarded.