ANNA KUHN AND SUSAN HOOVER

*v.*

HOLMES SHREEVE, *et al.*

(No. 10732)

Submitted September 20, 1955. Decided October 25, 1955.

*William M. Kidd, John H. Fox,* for appellants.

*E. Oldham Berry,* for appellees.

LOVINS, PRESIDENT:

This suit was instituted in the Circuit Court of Braxton County by Anna Kuhn and Susan Hoover, who are the distributees of F. G. Hoover, against Holmes Shreeve, Mary Shreeve Ptomey, Robert D. Shreeve, John Howard Shreeve, Jr., an infant, and Ben Beall, Trustee.

The object of the suit was to enforce the collection of a certain debt in the sum of $700.00, which allegedly is included in a note in the sum of $1452.00, signed by T. N. Shreeve and Minnie Shreeve. The $700.00 debt is allegedly secured by deed of trust on certain real estate containing .23 acre situate in the town of Burnsville, Braxton County, West Virginia.

T. W. Fletcher executed his negotiable note in the sum of $700.00, payable to F. G. Hoover bearing date the 11th day of March, 1914, and conveyed the land above mentioned in trust to Ben Beall, Trustee, to secure the payment of such note. T. N. Shreeve purchased the real estate from Fletcher, received a deed of conveyance which did not mention the deed of trust theretofore given by Fletcher.

F. G. Hoover died intestate on November 14, 1922, leaving the plaintiffs herein as his distributees and heirs at law. Walter Kuhn, the husband of Anna Kuhn, was appointed administrator of the estate of F. G. Hoover.

T. N. Shreeve and Minnie Shreeve made and executed a negotiable promissory note payable to the plaintiffs as the distributees of F. G. Hoover in the sum of $1452.00, allegedly including in the note the sum of $700.00, in addition to another debt of $500.00 due from Shreeve and wife to Hoover, plus the accrued interest. T. N. Shreeve and Minnie Shreeve, according to the allegations and proof were aware of the debt of $700.00 and the deed of trust to secure the same at the time the note for $1452.00 was made. T. N. Shreeve died on or about the 5th day of February, 1938, leaving surviving him his widow, Minnie Shreeve and the defendants Holmes Shreeve, Mary Shreeve Ptomey, Robert D. Shreeve, his children and heirs at law and John Howard Shreeve, Jr., an infant son of John Howard Shreeve, Sr., who died on the 21st day of June, 1923.

Walter Kuhn, administrator as aforesaid, made a final settlement of his accounts as administrator on or about the 28th day of November, 1924.

In the meanwhile, Minnie Shreeve, the widow of T. N. Shreeve, continued to occupy the real estate allegedly conveyed by the deed of trust until her death which occurred on December 31, 1952. It is alleged that Minnie Shreeve was related to the plaintiffs, being their aunt and first cousin. The plaintiffs aver that they did not want to create a hardship on Minnie Shreeve by forcing the sale of the real estate, thus depriving her of a home.

A demurrer to the plaintiffs' bill of complaint having been overruled, the defendants were given until December 28, 1953, to file their answer. They set up several defenses in their answer; principal ones being that the note given by the Shreeves to the plaintiffs did not expressly include the debt secured by the deed of trust. The answer admits the relationship of Minnie Shreeve to the plaintiffs. Defendants aver that they are the owners of the undivided interests in the land sought to be sold.

The infant filed a formal answer committing his in-

terest to the care of the court. Ben Beall, the trustee, upon being requested to sell the real estate, refused to do so. The plaintiffs pray for his removal as such trustee and the appointment of another trustee.

Walter Kuhn, the husband of Anna Kuhn, is the principal witness. He testified as to the various transactions relative to the debt of $700.00 and the giving of the note for $1452.00. The note for $1452.00 is exhibited with his testimony. The complainants testified that no payment had been made on the $1452.00 note. Mary Shreeve Ptomey testified as to her ability to pay and discharge the lien on the real estate had it been called to her attention.

After the filing of the exhibits and hearing of all oral testimony, the trial court entered a decree reciting that the court rejected all inadmissible testimony, and held that the near relationship of the parties and the devotion of plaintiffs to respondents' parents, together with other competent admissible testimony rebutted the presumption of payment; that the complainants are entitled to the relief prayed for in their bill of complaint, and decreed that E. O. Berry be appointed trustee instead of Ben Beall, and that such substituted trustee be vested with all powers of the original trustee.

The defendants prosecute an appeal from such decree. Some of the assignments of error go to jurisdiction of a court of equity and the admission of testimony. Other assignments are offered to defeat the suit, all of which may be stated as follows:

(1) That a court of equity does not have jurisdiction of the subject matter of this suit.

(2) That it was error to admit the testimony of Walter Kuhn relative to transactions between Kuhn, T. N. and Minnie Shreeve who were deceased at the time the testimony was given and such testimony should have been stricken from the record.

(3) That the deed of trust relied upon by the plaintiffs is barred by the statute of limitation.

(4) That the note of $1452.00 having been signed by new makers and payable to a new plaintiff constitutes a novation and abandonment of the note secured by a deed of trust.

(5) That the court erred in finding that the indebtedness of Shreeve to the estate of F. G. Hoover was unpaid.

(6) In refusing to apply the doctrine of presumption of payment.

(7) That the collection of the debt described in the bill of complaint was barred by the doctrine of laches.

Equity has jurisdiction of the enforcement of liens and the substitution of a trustee in a trust instrument. *Camden* v. *Alkire,* 24 W. Va. 674. See *Atherton et al.* v. *Hull et al.,* 12 W. Va. 170.

This suit was brought to enforce a lien and to substitute a trustee, the original trustee having refused to act. That being true, we are mindful of the well established principle of equity jurisprudence; that equity having jurisdiction of a cause on one ground, complete relief will be given. *Downes* v. *Lumber Co.,* 99 W. Va. 267, 128 S. E. 385; *Given et al.* v. *Gas Co.,* 84 W. Va. 301, 99 S. E. 476. See *Payne* v. *Fitzwater,* 103 W. Va. 12, 14, 136 S. E. 509. We are therefore of the opinion that this suit is properly brought in an equitable forum.

The testimony of Walter Kuhn relative to transactions between him, T. N. Shreeve and Minnie Shreeve was admitted. Undoubtedly, Kuhn testified as to the giving of the note by T. N. Shreeve and Minnie Shreeve, who were deceased at the time the testimony was given. It is provided by statute that: "No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as

follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, * * *". Chapter 67, Section 1, Acts of the Legislature, 1937, Regular Session.

The above statute was enacted for the purpose of removing to a certain extent the disability existing at common law of the parties in interest as witnesses. Certain exceptions are set forth in the statute. As to those exceptions, the common law rule remains unchanged. *Gilmer* v. *Baker*, 24 W. Va. 72, 84; *Crothers' Adm'r.* v. *Crothers*, 40 W. Va. 169, 174, 20 S. E. 927; *Bank* v. *Hulme*, 117 W. Va. 790, 794, 188 S. E. 225. Such exceptions are applied strictly. *Sayre* v. *Whetherhole*, 88 W. Va. 542, 107 S. E. 293. Walter Kuhn is not a party in interest, but he is the husband of Anna Kuhn. Does that fact render him incompetent to testify? Clearly Anna Kuhn would be barred from testifying as to personal transactions and communications had with T. N. Shreeve and Minnie Shreeve. Walter Kuhn, being her husband, would likewise be barred from testifying. *Sperry* v. *Clark,* 123 W. Va. 90, 13 S. E. 2d 404; *Sattes* v. *Sattes*, 113 W. Va. 708, 169 S. E. 392; *Freeman* v. *Freeman*, 71 W. Va. 303, 76 S. E. 657. The plaintiffs contend that though Walter Kuhn may be incompetent as a witness for his wife, he is competent as to Susan Hoover, his sister-in-law, a party in interest and one of the plaintiffs in this cause. Such question is somewhat obscure. We have found no decided cases in this jurisdiction touching that question. Other jurisdictions however, indicate that if a witness is incompetent as to one party in interest, he is likewise incompetent as to other parties. Where the parties are jointly interested in the result of litigation, the rule is well stated in 58 Am. Jur., Witness, Section 194, in the

following language: "In civil actions in which two co-parties are equally interested, the spouse of one is not competent to testify in favor of the other, since in doing so the testimony would be given indirectly in favor of the husband or wife of the witness, which at common law could not be done. * * * " Of course, if the person who was interested in the result of litigation has been completely and finally eliminated, then his spouse may testify in behalf of the coparty who remains in the case.

In a proceeding to probate a will involving a somewhat similar question, it was held that the husband of a contestant of the will was incompetent to testify for his wife or for any of the other contestants joined in challenging the will. *Allen* v. *Kinnibrugh,* (Okl.) 219 P. 676. See *Moffit* v. *State* (Tenn.) [2 Humphreys' 99], 36 Am. Dec. 301, in which case the same principle was applied to a criminal prosecution. See Vol. 4 A. & E. Annotated Cases 17. We therefore conclude that it was error to permit Walter Kuhn to testify as to transactions had by him as administrator of F. G. Hoover with T. N. Shreeve and Minnie Shreeve, both of whom were dead at the time Kuhn testified. But in the view we take of the case, it was harmless error.

We next come to the question of admissibility of testimony of Anna Kuhn and Susan Hoover to the effect that the note signed by T. N. Shreeve and Minnie Shreeve had not been paid. When the testimony was tendered, the trial court excluded their testimony which was placed in the record by an avowal. We are mindful of provisions of Code, 44-2-5, 6 and 8, permitting the claimant of a debt against decedents' estate to prove such debt before a commissioner of accounts, but such statutory authority is not sufficient to cover the introduction of testimony in a chancery cause.

The questions simply stated is: May a payee of a promissory note which is in his possession testify in a suit that such note has not been paid when the makers of the note are deceased? Or, to state it another way, is the

failure to pay a note a transaction or communication within the meaning of the statute? The test generally accepted is to the effect that if a deceased were alive and testifying, or an insane person were sane and testifying, could the testimony of a witness testifying in opposition to a transaction or communication be disputed by the testimony of the absent witness. In *Davidson* v. *Browning*, 73 W. Va. 276, 282, 80 S. E. 363, this Court said: "*'* * * To allow the defendant to testify to his manner of paying his personal obligations enables him only to say these checks represent his money or money he had the right to use. Such testimoney does not prove payment nor directly tend to do so. That must be made out by other evidence. This testimony does not fall within the reasoning of the court in *Owens* v. *Owens*, cited; *Caldwell* v. *Prindle*, 11 W. Va. 307; and *Anderson* v. *Cranmer*, 11 W. Va. 562." See *Seabright* v. *Seabright*, 28 W. Va. 412; *Johnson et al.* v. *Bee et al.*, 84 W. Va. 532, 100 S. E. 486; *Hancock* v. *Snider*, 101 W. Va. 535; *Poole* v. *Beller*, 104 W. Va. 547.

"The words 'personal transactions or communications,' within the meaning of sec. 23, ch. 130, Code, include every method whereby one person may derive impressions or information from the conduct, condition or language of another." Pt. 5, syllabus, *Freeman* v. *Freeman, supra.*

It seems to be the general rule, stated as follows: "Testimony of a witness of the payment or nonpayment of an obligation to a person relates to a transaction with him within the statute concerning transactions with a deceased * * * ". 58 Am. Jur., Witnesses, 245. *Davidson* v. *Browning, supra.*

The foregoing leads to the conclusion that the trial chancellor was correct in refusing to admit the testimony of Anna Kuhn and Susan Hoover.

The foregoing discussion leaves us with a record which is very meager as to evidence. The real merits of this suit remain to be discussed. It is true that Chapter 1,

Acts of the Legislature, 1949, Regular Session, provides in effect that a lien such as the one here considered would be barred after the expiration of twenty years "* * * from the date on which the original debt or obligation secured thereby becomes due * * *". Chapter 1, idem., amended and reenacted a previous statute which for the purpose of this opinion was similiar in its provisions. The validity of the prior act was before this Court in *LeSage* v. *Switzer*, 116 W. Va. 657, 182 S. E. 797. It was held that the prior act was violative of Article 1, Section 10 of the Constitution of the United States and Article III, Section 4 of the Constitution of West Virginia. The prior act was likewise before this Court in the case of *McClintic* v. *Land Co.*, 127 W. Va. 654, 34 S. E. 2d 267. The prior act was held unconstitutional and void "* * * so far as the same operates retroactively. The retroactive provision of the statute as it now exists operates to impair the obligation of contracts in violation of Section 10 of Article I of the Constitution of the United States, and Section 4 of Article III of the Constitution of this State." Since that time the former statute has been repealed and reenacted by Chapter 1, Acts of the Legislature, 1949, Regular Session, but for the purpose of this opinion, we can see no substantial difference as to the barring of the lien created by a deed of trust. The deed executed by Fletcher to Hoover bore date the 11th day of March, 1914. The deed of trust described the note secured as being for the sum of $700.00 due and payable 8 months after date, so it will be seen that the original statutes discussed in the *LeSage* and *McClintic* cases were enacted after the due date of the note claimed by the plaintiff. Hence, it follows that the $700.00 note here asserted by the plaintiffs is not barred by the statute, either as first enacted or reenacted by the 1949 Legislature. See *Criss* v. *Criss*, 28 W. Va. 388.

The defendants contend that when T. N. Shreeve and Minnie Shreeve gave their note for $1452.00 there was an abandonment or payment of the former note secured by a deed of trust, and that the $1452.00 note was a nova-

tion. The testimony offered by Walter Kuhn, which we have held inadmissible, touches the question of novation, but eliminating such question, it was the duty of the defendants who allege novation to prove the same. In discussing novation, this Court said in the case of *Sullivan* v. *Saunders*, 66 W. Va. 350, 351, 66 S. E. 497: "Appellants insist that the acceptance of this note from one of the judgment debtors by Sullivan for the amount of his judgment, with endorsers thereon who were strangers to the judgment, and the subsequent acceptance of the two notes by the individual endorsers, operated as a payment, and release, of the judgment. Was the note a payment of the judgment? This is one of the points presented for decision. Mr. Sullivan testifies that these notes were not taken in payment of the judgment, but were only intended as collateral security therefor. The settled rule in England and in most of the States of the Union is that, where a new obligation is taken in consideration of a prior one, it does not operate as a payment, or satisfaction of the old obligation, unless such was the agreement or intention of the creditor, notwithstanding the new obligation binds new parties. The question whether, or not, it operates as a novation of the old debt is one of intention by the creditor; and the burden of proving that such was his intention rests upon the one who asserts it. This rule applies in cases where the original obligation and subsequent one are of equal dignity; it has even greater force in cases where the original obligation is of greater dignity than the new one. In the present case the notes did not operate to discharge the judgment; there is no evidence that Sullivan consented, or agreed, to treat the notes as payment. Consequently, the acceptance of them by Sullivan did not operate to discharge the lien of his judgment. 30 Cyc. 1194-1197; *Cushwa* v. *Improvement Ass'n.*, 45 W. Va. 490; *Feamster* v. *Withrow*, 12 W. Va. 611; *Burnetts* v. *Miller*, 23 Grat. 551; *Coles* v. *Withers*, 33 Grat. 186; *Gilbert* v. *Washington &c. R. R. Co.*, Idem 586; *Karn* v. *Blacksford*, 20 S. E. (Va.) 149; *McGuire* v. *Godsby*, 3 Call. 234."

Where conditions under which a new note is given "* * * are left in a state of uncertainty or doubt, a renewal, in whatever form presented, is not a payment. *Morriss* v. *Harveys*, 75 Va. 726. Even a negotiable note, accompanied by a receipt in full, does not extinguish a judgment. *Feamster* v. *Withrow*, 12 W. Va. 611; See also *Moore* v. *Johnson*, 34 W. Va. 672; 3 Min. Inst., Pt. I, p. 414. The rule generally prevailing, though not without exception, is that a new obligation given in lieu of a prior one does not alone authorize the presumption of payment. * * * " *Dunn* v. *Bank of Union*, 74 W. Va. 594, 598, 82 S. E. 758. See *Dransfield* v. *Motor Co.*, 102 W. Va. 370, 135 S. E. 286. The burden of proving novation was on the defendants. Such burden is not carried by them. There is no proof offered to show that the note of $1452.00 was given and accepted in extinguishment of the $700.00 note. Novation is a matter of intention. *Taylor* v. *Godfrey*, 62 W. Va. 677, 59 S. E. 631. See *The Farmers Bank* v. *The Mut. Ass. Soc. & C.*, (Virginia Reports, Annotated) 4 Leigh 867; *Lazier* v. *Neevin, assignee, &c.*, 3 W. Va. 622; *Miller, use &c.* v. *Insurance Company*, 8 W. Va. 515; *Poole & Co.*, v. *Rice*, 9 W. Va. 73; *Dunlap's ex'rs. et al.* v. *Shanklin, ex'r. et al.*, 10 W. Va. 662. For an instructive discussion of the principles applicable to a novation, see *Peters* v. *Poro's Estate* (Vt.) 117 A. 274.

The defendants contend that it was erroneous for the trial chancellor to find that the debt of Shreeve to the estate of F. G. Hoover was unpaid. The fact that the $1452.00 note is in the possession of the distributees of F. G. Hoover is a strong and persuasive circumstance that the note is a subsisting obligation. Possession of a note by the payee is prima facie evidence of ownership. *Woodyard* v. *Sayre*, 90 W. Va. 547, 111 S. E. 313. Generally when people pay a note, it is surrendered by the payee or holder to the maker thereof. No showing of payment is made in this record. The note was due on the 1st day of November, 1925, and so far as it appears from

the record, no payment of the note or any part thereof has been made.

The presumption of payment is a factual presumption and may be rebutted. *McCleary* v. *Grantham,* 29 W. Va. 301, 11 S. E. 949. See *Mynes* v. *Mynes,* 47 W. Va. 681, 35 S. E. 935; *Criss* v. *Criss, supra.*

The principle of laches is urged by the defendants to prevent the enforcement of the debt, part of which is a lien and the other a common debt.

We bear in mind the fact that the plaintiffs and Minnie Shreeve were related by blood. We are also mindful of the fact that the estate of T. N. Shreeve was insolvent and in all probability, the estate of Minnie Shreeve was in like condition. The plaintiffs say they did not want to deprive Minnie Shreeve of a home. We think that has some bearing on the delay. It may not be a legal reason, but courts in administering justice have regard to human emotions, human likes and dislikes in situations of this kind. True, the enforcement of the $700.00 note which was due on the 11th day of November, 1914, has been delayed for 40 years. The note for $1452.00 was due on the 1st day of November, 1925, and enforcement thereof has not been had for 29 years. "* * * 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right' * * *". *Bank* v. *Coal Corp.,* 133 W. Va. 639, 655, 57 S. E. 2d 736; *Caplan* v. *Shaw,* 126 W. Va. 676, 30 S. E. 2d 132; *Depue* v. *Miller,* 65 W. Va. 120, 64 S. E. 740. There is no indication that the plaintiff has waived the debt in the peculiar circumstances of this case. "Delay alone does not constitute laches; it is delay which places another at a disadvantage." Pt. 3, syllabus, *Carter* v. *Carter,* 107 W. Va. 394, 148 S. E. 378. But that alone does not cause an estoppel to arise in the circumstances of this case. We think the delay was excusable. We do not think the defendants have suffered any prejudice by such delay un-

less the deaths of T. N. Shreeve and Minnie Shreeve deprived them of the deceased's testimony.

We therefore affirm the decree of the Circuit Court of Braxton County.

*Affirmed.*