406 A.2d 726

**ESTATE of Herman GROSSMAN, Deceased.**

**Appeals of Rhoda KESSELMAN, Max Grossman and Thelma Selet.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1979.

Decided Oct. 1, 1979.

Jacob S. Richman, Philadelphia, for appellants.

Samuel S. Blank, Upper Darby, Delaware County, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Herman Grossman died on November 9, 1973, survived by six children, Joseph Grossman, Max Grossman, Doris Roseman, Burton Grossman, Thelma Selet, and Rhoda Kesselman. Decedent's will, dated October 19, 1972, directed payment of all testator's debts, funeral expenses, and all inheritance taxes. The will provided that of the residue of decedent's estate, his son Joseph was to receive fifty percent, his daughter Doris was to receive fifteen percent, his grandchildren Margo and Duffy Grossman ·were each to receive twelve and a half percent, and his brother Max Grossman was to receive ten percent. Decedent's 1972 will was admitted to probate and, on October 22, 1974, letters testamentary were issued to the executor of the estate, his son, Joseph Grossman.

Decedent's disinherited children (Max, Rhoda, Thelma and Burton) objected to the first and final accounting of the estate. Rhoda claimed a one-half share of her father's net estate plus executor's commission.[1] In the alternative, Rho-

1. The contestants also claimed that (1) the executor failed to include in the estate a Cadillac automobile, jewelry, furniture, a Chrysler note, and cash, owned individually or jointly by decedent at the time of his death; (2) the executor claimed credit for unjustified legal fees and fiduciary commissions; (3) claimants are entitled to jewelry originally owned by their mother or to its proportionate value, stated to be $1500 for each claimant; and (4) claimants are entitled to share equally in the estate by reason of an oral agreement among decedent's children, despite decedent's testamentary dispositions.

da claimed she was entitled to recover from the estate damages in quantum meruit for her expenditures and services with respect to certain of decedent's property. At the hearing before the auditing judge, Rhoda sought to establish her entitlement to a portion of the estate by proving that she and her father had entered into an oral agreement by which he agreed to execute a will leaving one-half of his estate to Rhoda and appointing her executrix, and that her father breached the agreement.[2] The auditing judge ruled that the testimony of both Rhoda and her husband, Stanley Kesselman, was incompetent under the Pennsylvania Dead Man's Statute, Act of May 23, 1887, P.L. 158, § 5(e), 28 P.S. § 322 (1958).[3] The court, therefore, refused to permit Rhoda or Stanley to testify in support of the claim, and rejected Rhoda's claim because the evidence of the agreement was not clear and convincing. By decree nisi, the auditing judge dismissed the claims of all the contestants and confirmed the account.[4]

Contestants excepted to the decree nisi arguing inter alia that the Dead Man's Statute was improperly applied by the auditing judge to bar the testimony of claimant's husband, Stanley Kesselman. The orphans' court en banc dismissed appellants' exceptions and confirmed the decree nisi. On appeal to this Court appellants again contend that the orphans' court erred when it ruled that Stanley Kesselman's testimony was incompetent solely because he was the spouse

2. Appellants introduced into evidence an earlier will dated March 27, 1967, which appointed Rhoda executrix of decedent's estate and granted her fifty percent of the residue.

3. The statute was recently reenacted as part of the new Judicial Code and now appears in substantially the same form at 42 Pa.C.S.A. § 5930.

4. The auditing judge also refused to permit Stanley Kesselman to testify after he had executed a form waiving any interest he may have had in the outcome of the litigation. The auditing judge ruled that because Kesselman's incompetency was derived, as a matter of law, from the interest of his wife, Kesselman could only remove himself from the operation of the Dead Man's Statute if Rhoda Kesselman also executed a release of her interest. See Henry, *Pennsylvania Evidence* § 768.

of a party whose interest was adverse to that of a decedent.[5] We agree that the orphans' court erred and hold that the testimony of Stanley Kesselman may not be excluded under the Dead Man's Statute solely on the basis of his marital status.[6]

I. *The Language of the Dead Man's Statute Does Not Require Exclusion of the Testimony of the Spouse of an Adverse Interested Party*

At common law the testimony of parties to a lawsuit and any other person who had a direct pecuniary or proprietary interest in its outcome was considered incompetent. See

**5.** This case was re-assigned to this writer on March 30, 1979.

**6.** Also included in the exceptions taken to the decree nisi, and renewed on appeal, are contentions that the Dead Man's Statute, as applied to Rhoda Kesselman, and as applied to Stanley Kesselman, violates the due process and equal protection clauses of the Constitutions of the United States and of the Commonwealth of Pennsylvania. In its opinion of May 24, 1977, the orphans' court en banc summarily dismissed these contentions. Appellants, nonetheless, renewed their constitutional challenges on appeal. By a per curiam order of September 27, 1978, this Court, pursuant to Pa.R.A.P. 1925(a), directed the orphans' court en banc to file an opinion addressing the duly raised issue of the Statute's constitutionality as applied to Rhoda and Stanley Kesselman. In its Opinion Sur Order of the Supreme Court, filed on February 28, 1979, the orphans' court concluded that § 5(e) of the Act of 1887 is not unconstitutional and that the auditing judge correctly ruled that Rhoda and Stanley Kesselman were incompetent to testify. For many years, dead man's statutes have been the object of much scholarly criticism. See, e. g., Chadbourne, *History and Interpretation of the California Dead Man Statute: A Proposal for Liberalization,* 4 U.C.L.A.L.Rev. 175 (1957); Ray, *The Dead Man's Statute—A Relic of the Past,* 10 Sw.L.J. 390 (1956); Silverman, *The Pennsylvania Dead Man's Rule: A Decedent's Delight,* 11 Duq.L.Rev. 313 (1973); Schulman, *Repeal the Dead Man's Evidence Act,* 35 Pa.B.A.Q. 183 (1964); Ray, *Dead Man's Statutes,* 24 Ohio St.L.J. 89 (1963); Carpenter, *The Dead Man's Statute in Pennsylvania,* 32 Temp.L.Q. 399 (1959); Wigmore, *Evidence* § 578 (3d ed. 1940). See also *St. John v. Lofland,* 5 N.D. 140, 64 N.W. 930 (1895). Traditionally, however, this Court has declined to reach constitutional questions where a non-constitutional ground is dispositive of the litigation. See, e. g., *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 322, 368 A.2d 648, 650 (1977). Moreover, our present disposition of this case renders it unnecessary to presently consider appellants' other properly preserved allegations of error.

generally, Wigmore, *Evidence* § 575. In England, the disqualification of the testimony of interested witnesses was removed by Parliament in 1834. Lord Denman's Act, 6 & 7 Victoria, ch. 85. And, in 1851, the testimony of parties to the lawsuit was rendered competent by Lord Brougham's Act, 14 & 15 Victoria, ch. 99. The reform movement begun in England quickly spread to the United States and the Pennsylvania Legislature removed the broad common law testimonial disqualification of interested persons by the Act of April 15, 1869, P.L. 30, § 1. Yet, like other American jurisdictions, the Pennsylvania Legislature carved an exception out of the broad enabling legislation. That exception is commonly known as the Dead Man's Statute.[7]

In its most recent form, Pennsylvania's Dead Man's Statute provides:

"Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, unless the action or proceeding is by or against the surviving or remaining partners, joint promisors or joint promisees of such deceased or lunatic party, and the matter occurred between such surviving or remaining partners, joint promisors or joint promisees and the other party on the record, or between such surviving or remaining partners, promisors or promisees and the person having an interest adverse to them, in which case any person

---

7. No exception comparable to the Dead Man's Statute has ever been enacted in England. For statutes in other common law jurisdictions removing the common law disqualification and creating an exception for interested adverse parties to a transaction with a decedent or incompetent, see generally Wigmore, *Evidence* § 488 (3d ed.).

may testify to such matters; or, unless the action is a possessory action against several defendants, and one or more of said defendants disclaims of record any title to the premises in controversy at the time the suit was brought and also pays into court the costs accrued at the time of his disclaimer, or gives security therefor as the court in its discretion may direct, in which case such disclaiming defendant shall be a fully competent witness; or, unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses."

42 Pa.C.S.A. § 5930.

On its face, the Pennsylvania Dead Man's Statute excludes only the testimony of interested parties to a transaction with a deceased. The statutory language does not exclude the testimony of the spouse of an incompetent party on the basis of martial status alone and does not refer to spouses of disqualified parties at all. Nonetheless, only two years after passage of the Act of 1887, in *Bitner v. Boone*, 128 Pa. 567, 18 A. 404 (1889), the statute was construed to bar the testimony of the spouse of a disqualified party. A decade before the turn of this century, the *Bitner* court reasoned:

"If the husband must be excluded on account of interest, so also must his wife be excluded on account of her unity of interest with him. Although each may not be said to have any direct interest during coverture, she has, nevertheless, an indirect interest derivative from her husband, and so presently joined with his, as at all periods in the history of the law placed her in the attitude of an interested person, in cases where her husband's rights came into controversy. So closely connected in interest are they, that in equity, in controversies affecting the interests of either, the testimony of both is considered as the testimo-

ny of one person only: *Sower v. Weaver*, 78 Pa. 443 [(1875)]. If the legislature had intended to change the law in this respect, against the theory of both the common and the statute law and the habits of centuries, it is reasonable to suppose that the change would not have rested upon any mere implication, but would have been expressed in plain words."

*Id.* at 571, 18 A. at 405. So too, is it not just as reasonable to conclude that if the Legislature intended to exclude spouses, the disqualification "would not have rested upon a mere implication, but would have been expressed in plain words?" *Id.* See 1 Pa.C.S.A. § 1921(b).

In *Weaver v. Welsh*, 325 Pa. 571, 191 A. 3 (1937), this Court in the course of applying the rule of *Bitner v. Boone*, again stated that the rule disqualifying the testimony of the spouse of an interested witness found its theoretical roots in the fictional unity of husband and wife. That, under the *Bitner* rule, any inquiry whether the spouse is actually an interested person is irrelevant is further indicated by the rule's corollaries that "[t]he death of the one having such interest does not render the other competent nor is a release by one effective for that purpose if the other still retains his or her interest. A release by both is necessary." Henry, *Pennsylvania Evidence*, § 768.[8]

## II. *The Rationale and Policy on which the Bitner Rule is Based Must be Re-examined*

*Bitner* has been repeatedly followed by the courts of this Commonwealth essentially without challenge, analysis or question. See, e. g., *In re Nakoneczny's Estate*, 456 Pa. 320, 319 A.2d 893 (1974); *Moore Estate*, 439 Pa. 578, 266 A.2d 641 (1970); *Weaver v. Welsh*, 325 Pa. 571, 191 A. 3 (1937); *Uhl v. Mostoller*, 298 Pa. 124, 148 A. 61 (1929); *Sheaffer v. Brown*, 281 Pa. 114, 126 A. 239 (1924); *Reap v. Dougher*, 261 Pa. 23, 103 A. 1014 (1918); *Burke v. Burke*, 240 Pa. 379, 87 A. 960 (1913); *Myers v. Litts*, 195 Pa. 595, 46 A. 131 (1900); *Appeal of Daisz*, 128 Pa. 572, 18 A. 414 (1889). But a survey of the

8. See note 4, supra.

468

law of other American jurisdictions reveals that Pennsylvania is within a small minority of jurisdictions. It is clear that re-examination of the rule is appropriate.[9]

9. Only Maine (e. g., *Tuck v. Bean*, 130 Me. 277, 155 A. 277 (1931)), Kentucky (e. g., *Johnson's Admr. v. Johnson*, 244 S.W.2d 969 (Ky. 1950)), and West Virginia (e. g., *Kuhn v. Shreve*, 141 W.Va. 170, 89 S.E.2d 685 (1955)) appear to automatically disqualify the testimony of spouses of interested parties. Although Washington also automatically excludes spouses' testimony, it does so on the theory that the law of community property makes the spouse an interested person in fact. See, e. g., *McGugart v. Brumback*, 77 Wash.2d 441, 463 P.2d 140 (1969). Minnesota has developed an interesting variation on the minority view. It per se excludes the testimony of spouses in litigation involving a claim to real property but allows the spouse of a party to litigation involving a claim to personal property to testify. *In re Estate of Lea*, 301 Minn. 253, 222 N.W.2d 92 (1974).

At least twenty-seven jurisdictions do not disqualify testimony of spouses of interested parties unless the spouse is, in fact, an interested party: Alabama (e. g., *American Surety Co. v. O'Hara*, 232 Ala. 616, 169 So. 229 (1936)), Arizona (e. g., *Murillo v. Hernandez*, 79 Ariz. 1, 281 P.2d 786 (1955)), Arkansas (e. g., *Smart v. Owen*, 208 Ark. 662, 187 S.W.2d 312 (1945)), California (e. g., *Cullen v. Bisbee*, 168 Cal. 695, 144 P. 968 (1914)), Colorado (e. g., *Norris v. Bradshaw*, 92 Colo. 34, 18 P.2d 467 (1933)), Florida (e. g., *Farrington v. Richardson*, 153 Fla. 907, 16 So.2d 158 (1944)), Georgia (e. g., *Kitchens v. Pool*, 146 Ga. 229, 91 S.E. 81 (1916)), Illinois (e. g., *Heineman v. Hermann*, 385 Ill. 191, 52 N.E.2d 263 (1944)), Kansas (e. g., *Popp v. Wilhelm*, 150 Kan. 753, 96 P.2d 620 (1939)), Michigan (e. g., *Beaupre v. Holzbaugh*, 327 Mich. 101, 41 N.W.2d 338, 27 A.L.R.2d 532 (1950)), Mississippi (e. g., *Ellis v. Berry*, 145 Miss. 652, 110 So. 211 (1926)), Missouri (e. g., *Embry v. Martz Est.*, 377 S.W.2d 367 (Mo.1964)), Montana (e. g., *Novak v. Novak*, 141 Mont. 312, 377 P.2d 367 (1963)), Nebraska (e. g., *O'Neal v. First Trust Co.*, 160 Neb. 469, 70 N.W.2d 466 (1955)), Nevada (e. g., *Onesti v. Samoville*, 48 Nev. 441, 233 P. 846 (1925)), New Hampshire (e. g., *White v. Poole*, 74 N.H. 71, 65 A. 255 (1906)), New Jersey (e. g., *Wooster v. Eagan*, 88 N.J.Law. 637, 97 A. 291 (1916)), New York (e. g., *Laka v. Krystek*, 261 N.Y. 126, 184 N.E. 732, 88 A.L.R. 243 (1933)), North Carolina (e. g., *Allen v. Allen*, 213 N.C. 264, 195 S.E. 801 (1938)), North Dakota (e. g., *Frink v. Taylor*, 59 N.D. 47, 228 N.W. 459 (1930)), Ohio (e. g., *Gladman v. Carns*, 9 Ohio App.2d 135, 38 Ohio Ops.2d 149, 223 N.E.2d 378 (1964)), South Carolina (e. g., *Riddle v. George*, 181 S.C. 360, 187 S.E. 524 (1936)), South Dakota (e. g., *Ekern v. Erickson*, 37 S.D. 300, 157 N.W. 1062 (1916)), Tennessee (e. g., *Estate of Upchurch*, 62 Tenn. App. 634, 466 S.W.2d 886 (1971)), Texas (e. g., *Lehman v. Krahl*, 155 Tex. 270, 285 S.W.2d 179 (1955)), Utah (e. g., *Olson v. Scott*, 61 Utah 42, 210 P. 987 (1922)), and Wisconsin (e. g., *In re Christen*, 72 Wis.2d 8, 239 N.W.2d 528 (1976)).

The dead man's statutes of three states, Indiana, Iowa and Virginia, expressly exclude the testimony of spouses. The Iowa exclusion has been interpreted very narrowly and spouses of interested parties may

In the past, this Court has not been hesitant to reconsider precedent when the principles it represents are out of accord with conditions of modern life. See, e. g., *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) (governmental immunity abandoned); *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972) (rejected rule that psychiatric evidence is inadmissible in murder prosecution for purposes of determining whether defendant acted in heat of passion); *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972) (rejected prior cases concerning scope of permissible remarks by a judge to jury); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (abrogated parental immunity); *Conestoga National Bank v. Patterson*, 442 Pa. 289, 275 A.2d 6 (1971) (reversed prior rule regarding procedure afforded protesting banks in branch bank application situations); *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970) (rejected prior rule imputing contributory negligence of driver to owner-passenger); *Papieves v. Kelly*, 437 Pa. 373, 263 A.2d 118 (1970) (recovery permitted for emotional distress resulting from intentional or wanton misconduct); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) (abolished impact rule); *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968) (rejected prior limitation on a landlord's liability for defective conditions); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968) (eliminated vertical privity requirement); *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967) (effect of release in third-party action); *Beckham v. Travelers Ins. Co.*, 424 Pa. 107, 225 A.2d 532 (1967) (abandoned distinction between accidental means and accidental results); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (adopted Restatement, Second, Torts, § 402A); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965) (abrogated charitable immunity); *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964) (rejected lex loci rule of conflicts of law); *Olin Mathieson C. Corp. v. White C.*

testify where the spouse took no part in the transaction or communications with which the testimony is concerned. *Johnson v. Johnson*, 52 Iowa 586, 3 N.W. 661 (1879). Accord, *In re Beaver*, 206 N.W.2d 692 (Iowa 1973).

*Stores*, 414 Pa. 95, 199 A.2d 266 (1964) (Pennsylvania Fair Trade Act unconstitutional); *Campbell v. Fiorot*, 411 Pa. 157, 191 A.2d 657 (1963) (repudiated prior rule regarding evidence of skidding car); *Catherwood Trust*, 405 Pa. 61, 173 A.2d 86 (1961) (abolished Pennsylvania Rule of Apportionment); *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960) (rejected prior case law which held infant does not have a cause of action for prenatal injuries); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958) (changed felony murder rule).

In *Ayala*, supra, 453 Pa. at 606, 305 A.2d at 888, this Court stated: "The controlling principle which emerges from these and other decisions is clear—the doctrine of *stare decisis* is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish." "Surely, the orderly development of the law must be responsive to new conditions and to the persuasion of superior reasoning." *Griffith v. United Air Lines, Inc.*, 416 Pa. at 23, 203 A.2d at 806. " 'When precedent is examined in the light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function." *Ayala*, supra, 453 Pa. at 603, 305 A.2d at 886–87 (quoting *Smith v. State*, 93 Idaho 795, 801, 473 P.2d 937, 943 (1970)). It is the essence of common law courts today as in earlier times to view the body of the law as a living and developing legal system designed to serve societal needs in elevating the life and utility of the law rather than as a static set of rules.

Any argument that this Court would step beyond the bounds of proper judicial decisionmaking by overruling *Bitner* and its progeny must be rejected. As previously noted, the express language of the Dead Man's Statute does not compel the result reached a century ago in *Bitner*. Where, as here, an issue is not controlled by statute, this Court is jurisprudentially obliged to engage in careful re-examination of the reasoning and modern relevancy of the public

policy considerations underlying the Court's prior construction of the statute. Indeed, re-examination of a century old precedent in light of current public policy is an integral component of sound judicial responsibility. "Precedent speaks for the past; policy for the present and the future. The goal which we seek is a blend which takes into account in due proportion the wisdom of the past and the needs of the present." Schaefer, *Precedent and Policy*, 34 U.Chi.L. Rev. 3, 24 (1966).

III. *Modern Social and Economic Conditions Compel Abandonment of the Bitner Rule*

The issue before us provides an excellent illustration of the principle enunciated by Justice Cardozo that "[a] rule which in its origins was the creation of the courts themselves, and was supposed in the making to express the *mores* of the day, may be abrogated by the courts when the *mores* have so changed that perpetuation of the rule would do violence to the social conscience." Cardozo, *The Growth of the Law* 136–37 (1924). While recent social and political events have played an important role in dealing the fatal blows to the common law fiction that husband and wife are one and the same person, its roots were to a large extent obliterated more than a century ago by the widespread enactment of Married Women's Acts. See *Immer v. Risko*, 56 N.J. 482, 267 A.2d 481 (1970). See also *Freehe v. Freehe*, 81 Wash.2d 183, 500 P.2d 771 (1972); W. Prosser, Torts § 122 (4th ed. 1971); Restatement Second, Torts § 895F and Comment. This Court, too, has recognized the changes in the spousal relationship pervading our society. Twenty-one years ago, we rejected the argument that interspousal tort immunity could be properly justified by the unity theory and noted that "[t]he shackles with which the common law fiction bound a wife no longer exist." *Johnson v. Peoples First National Bank & Trust*, 394 Pa. 116, 120, 145 A.2d 716, 718 (1958).[10] And almost eighty years ago the courts of

10. The *Johnson* court, however, refused to abrogate interspousal immunity. It held that interspousal immunity was also based on the

Pennsylvania abandoned the very fiction upon which the *Bitner* court relied, that the testimony of husband and wife must be viewed as the testimony of one person. See *Sower v. Weaver*, 78 Pa. 443 (1875) (husband and wife viewed as one witness for purpose of two witness rule). In *Guernsey v. Froude*, 13 Pa.Super. 405 (1900), the Superior Court held that the testimony of husband and wife was to be considered by the jury as that of two witnesses. The court reasoned that "[t]he wife has at last attained to a separate existence on the witness stand, and her testimony must henceforth be treated as if it came from a person with a mind and will of her own, and not from a mere automaton without will or conscience, and wholly responsive to her husband's touch." Id., 13 Pa.Super. at 411. Accord, *Italo French Produce Co. v. Thomas*, 28 Pa.Super. 293 (1905).

■ Thus it is clear that the testimony of the spouse of an interested witness may no longer be disqualified on the theory that husband and wife are one and the same person. Appellees contend, however, that the rule disqualifying the testimony of Stanley Kesselman is based on the identity of interest of husband and wife rather than upon the identity of their persons. But such a technical distinction is erroneously drawn. Any presumption of identity of interest is based upon the same outmoded social conditions and policy as was the common law legal fiction of unity of person of husband and wife. Judges, like all others, live and work in a real flesh and blood world, tempered by the social and cultural climate of the day. "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. Indiana*, 388 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801, 1805 (1949). Experience indicates, and all perceptive individuals inside and outside the legal profession know, that to say in 1979 that husband and wife

still relevant policy consideration of preventing marital discord. That policy, however, has no application to *Bitner* cases where disqualification is based upon the theory that the interests of the parties to marriage will be identical rather than adverse. See also *DiGirolamo v. Apanavage*, 454 Pa. 557, 312 A.2d 382 (1975) (reaffirming interspousal immunity solely on marital discord theory).

are one and that their interests are identical is an unmitigated fiction, an assumption supported by nothing more than the meager strength of its own weak assertion. This Court cannot and must not disregard the plain fact that spouses are no longer completely dependent upon one another either economically, socially or legally.

 Further, even were we to accept the distinction appellees would draw, the rule of *Bitner v. Boone* must nonetheless fail. Modern conditions demand that courts no longer engage in the automatic and unsupported assumption that one's pecuniary or proprietary interest is identical to that of one's spouse. For many years, parties to a marriage have often pursued independent careers, businesses and vocations. And the general interest of a spouse in the prosperity of the other is insufficient to meet the requirement of the Dead Man's Statute that an interested party is one whose personal pecuniary or proprietary interest will be directly affected by the outcome of the litigation. See *Hendrickson Estate*, 388 Pa. 39, 130 A.2d 143 (1957). Moreover, any interest limited to the expectation that upon the other's death, the disqualified spouse may perhaps become a beneficiary of the proceeds of the litigation is indeed too speculative to be a disqualifying interest. See *Gaston Estate*, 361 Pa. 105, 62 A.2d 904 (1949). Finally, the *Bitner* rule cannot find support in the rationale that a witness will commit perjury because of friendship, loyalty, or kinship since application of the Dead Man's Statute has traditionally ignored such subtle psychologically suggested motives for testifying falsely and instead focused solely upon pecuniary and proprietary interests. See, e. g., *Pavlinko's Estate*, 399 Pa. 536, 160 A.2d 554 (1960) (daughter of interested party may testify); *Groome's Estate*, 337 Pa. 250, 11 A.2d 271 (1940) (agent of interested party may testify). See also Silverman, *The Pennsylvania Dead Man's Rule: A Decedent's Delight*, 11 Duq.L.Rev. 313, 335 (1973); Schulman, *Repeal the Dead Man's Evidence Act*, 35 Pa.B.A.Q. 183, 185 (1964). The fact that a witness may be unfriendly to a decedent's cause and partial to that of the survivor may affect credibility, but does not affect competency. *Billow v.*

*Billow,* 360 Pa. 343, 61 A.2d 817 (1949). Indeed, the *Bitner* rule is contrary to this Court's repeated jurisprudential admonition that competency of witnesses is the rule and incompetency is the exception. E. g., *In re Estate of Mc-Fetridge,* 472 Pa. 546, 372 A.2d 823 (1977).

We can conceive of no acceptable rationale for a per se rule disqualifying the testimony of the spouse of a surviving interested party to a transaction with a decedent. As one commentator has noted "[s]uch ill-reasoned extensions of the Dead Man's Act, through the use of fictions, have made its existence even more burdensome." Carpenter, *The Dead Man's Statute in Pennsylvania,* 32 Temp.L.Q. 399, 306 (1959). We therefore overrule *Bitner v. Boone,* supra, and the cases following it and hold that spouses of an interested party to a transaction with a decedent may not be barred from testifying on the basis of marital status alone.

The decree of the orphans' court is vacated and the case remanded for proceedings consistent with this opinion. Each party pays own costs.

POMEROY, J., did not participate in the decision of this case.

NIX, J., concurs in the result.

LARSEN, J., dissents.